IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-01819-PAB-JPO

WESLEY D. HUTCHINS;
CAROL A SQUIRES;
KURT T. SQUIRES;
LINDA L. JONES; and
BRUCE B. HUTCHINS,

Plaintiffs,

v.

BOARD OF COUNTY COMMISSIONERS OF LARIMER COUNTY, COLORADO;
LORI HODGES in her official capacity as an employee of Larimer County;
MORGAN FAY in her official capacity as an employee of Larimer County;
STEVE KAYE;
SHORT-ELLIOTT-HENDRICKSON, INC., a Minnesota corporation;
JOHN AND JANE DOES I THROUGH XX; and
ABC CORPORATIONS I THROUGH XX,

Defendants.

---

## ORDER AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**JAMES P. O'HARA**
**United States Magistrate Judge**

This case is before the Court on four motions referred to the undersigned by Chief

Judge Philip A. Brimmer:

- Defendants Short-Elliot-Hendrickson, Inc. ("SEH") and Steve Kaye's (collectively the "SEH Defendants") Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6). ECF No. 43. Plaintiffs Wesley D. Hutchins, Carol A. Squires, Kurt T. Squires, Linda L. Jones, and Bruce B. Hutchins (collectively "Plaintiffs") filed a response. ECF No. 54. The SEH Defendants filed a reply. ECF No. 60.

- Defendants Board of County Commissioners of Larimer County ("Larimer County"), Lori Hodges, and Morgan Fay's (collectively "Larimer County Defendants") Motion to Dismiss Plaintiffs' Amended Complaint. ECF No. 47. Plaintiffs filed a response. ECF No. 63. The Larimer County Defendants filed a reply. ECF No. 64.

- Plaintiffs' Amended Verified Motion for Order Finding Compliance with Certificate of Review Requirement. ECF No. 52. The SEH Defendants filed a response. ECF No. 59. Plaintiffs filed a reply. ECF No. 61.

- Finally, Plaintiffs' Rule 15(d) Motion for Leave to File Combined Supplemental Memorandum in Opposition to Defendants' Motions to Dismiss. ECF No. 66. Defendants filed a joint response in opposition. ECF No. 66. Plaintiffs filed a reply in support. ECF No. 69.

The Court has taken judicial notice of the docket and considered the applicable Federal Rules of Civil Procedure and case law. Now, being fully informed and for the reasons discussed below, the Court makes the following Order and Recommendation.

## I.    Background and Procedural History[1]

Plaintiffs, proceeding pro se,[2] filed this lawsuit in state court against Larimer County on June 22, 2023. ECF No. 4. The case was removed to federal court on July 18, 2023. ECF No. 1.

---

[1] All citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.

[2] Generally, the Court must construe the filings of pro se litigants liberally. *See Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.1991). However, it appears that Plaintiff Wesley D. Hutchins, who is the first signature on all of Plaintiffs' filings and who signs all the certificates of service, is an attorney licensed to practice in the state of Utah. A plaintiff's "status as a licensed

On September 12, 2023, Plaintiffs filed the operative Amended Complaint, ECF No. 22, to which they attached numerous exhibits totaling nearly 100 pages, *see* ECF No. 22-1. The Amended Complaint added Lori Hodges and Morgan Fay (in their official capacities) and the SEH Defendants as parties. The subject motions followed.

In the Amended Complaint, Plaintiffs seek damages for the destruction of a private, one-lane bridge (the "Bridge") over the Cache La Poudre River in Larimer County. *See generally* ECF No. 22. The Bridge was the only way Plaintiffs could access their jointly-owned cabin. *Id.* ¶ 34. The Bridge was damaged during a storm on July 20, 2021 when debris displaced one of the Bridge's five posts and tilted a support post on its North Pier, and increased water "scoured and undermined" the South Pier "causing it to rotate and tip sideways, partially in the River." *Id.* ¶¶ 39–40.

The next day, Larimer County engineers, including Ms. Fay, visually inspected the Bridge. *Id.* ¶ 43. Ms. Fay's initial report recommended an additional inspection be done to determine whether the Bridge could be stabilized or if it should be removed, citing the risk of possible downstream damage. *Id.*; *see also* ECF No. 22-1 at 13–17 (Ms. Morgan's initial report). Plaintiffs allege that Ms. Fay's report misleadingly does not mention the one-acre 20-yard-wide island approximately 500 yards downstream from the Bridge. ECF No. 22 ¶ 43.

Larimer County had retained SEH to assess the damage, and on July 23, 2021, Defendant Steve Kaye, an SEH engineer, visited the Bridge. *Id.* ¶¶ 42, 44. "SEH

---

attorney reduces the deference to which he is entitled as a pro se litigant." *Baldwin v. United States*, No. 11–cv–02033–MSK–KLM, 2012 WL 7051296, at *1 n.1 (citing *Smith v. Plati*, 258 F.3d 1167, 1174 (10th Cir. 2001)). In any case, pro se parties must "follow the same rules of procedure that govern other litigants." *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994) (citation omitted).

concurred with [Larimer County]'s recommendation to prohibit vehicle traffic on the Bridge and to remove the current structure and debris pile, depending upon further investigation and analysis." *Id.* ¶ 44; *see also* ECF No. 22-1 at 19–20 (Mr. Kaye's inspection report).

On July 28, 2021, Larimer County Code Compliance Supervisor Amy White issued a Notice of Imminent Danger, which stated that if additional debris hit the Bridge and if the Bridge then broke into pieces and floated downstream, it could result in risk to other bridges downstream. ECF No. 22 ¶ 45; *see also* ECF No. 22-1 at 22–27. According to the Notice of Imminent Danger,

> Repair of the [Bridge] is not feasible. To leave an existing 3-span bridge in the warterway [sic] that may sustain further damage due to additional flooding or debris flow from Black Hollow area creates life-safety and property damage issues. To attempt to retrofit a new superstructure on top of an already deteriorated concrete substructure is problematic. As well, the cost to repair the existing structure may be considerable and nearly the same cost as constructing a full replacement which meets or exceed waterway conveyance requirements and removes inherent risk that piers pose in the water.

ECF No. 22 ¶ 46. "The Notice of Imminent Danger directed Plaintiffs and other property owners in the area to not use the Bridge and informed them that they had 15 days to appeal the decision to the Larimer County Board of Appeals," or until August 12, 2021. *Id.* ¶¶ 47–48. Plaintiffs allege that the Notice of Imminent Danger contains many false, inaccurate, and misleading statements. *Id.* ¶ 49.

Along with the Notice of Imminent Danger, Ms. White issued a Notice of Demolition and an Order of Demolition, the latter of which stated that the Bridge was to be demolished on July 29–August 3, 2021. *Id.* ¶¶ 51, 54; *see also* ECF No. ECF No. 22-1 at 4–5, 29–30. Plaintiffs contend that the Notice of Demolition was improper because the Bridge "was highly repairable within a relatively short period of time." ECF No. 22 ¶ 53. Both the Notice and Order of Demolition refer to the 15-day right to appeal set forth in the

Notice of Imminent Danger, which was issued on the same day, and state that no appeal had yet been filed. *Id.* ¶¶ 52, 55.

On July 27, 2021, another property owner provided Larimer County with a stabilization plan for the Bridge. *Id.* ¶ 56. Larimer County also received two professional drawings of a fully repaired concrete pier. *Id.* Larimer County rejected these and other alternatives and removed the Bridge on August 4, 2021. *Id.* ¶¶ 57–59.

On August 6, 2021, SEH issued another report recommending that a more detailed assessment of the Bridge's elements be performed after the debris is removed. *Id.* ¶ 63; *see also* ECF No. 22-1 at 49–51. SEH did not recommend that the Bridge be removed in this report. ECF No. 22 ¶ 64.

Plaintiffs allege that Ms. Fay and others improperly influenced Mr. Kaye and SEH to alter SEH's August 6, 2021 report. ECF No. 22-1 at 53–59. SEH issued a final report on August 13, 2012, which recommended for the first that the Bridge "be replaced or repaired in accordance with current Larimer County private vehicular bridge requirements." ECF No. 22 ¶¶ 66–68; *see also* ECF No. 22-1 at 61–72.

Plaintiffs bring five causes of action against the Larimer County Defendants: (1) an "imminent domain/inverse condemnation" claim under both the United States and Colorado Constitutions (referred to herein as the "Takings claim"); (2) a substantive and procedural due process claim under the United States and Colorado Constitutions; (3) a "willful and wanton conduct" claim; (4) a declaratory judgment that Larimer County is obligated to replace the Bridge; and (5) a "discretionary remedies" claim. ECF No. 22 ¶¶ 85–105, 112–119.

Plaintiffs bring one claim for negligence against the SEH Defendants. *Id.* ¶¶ 106–111.

## II.    Legal Standard

Both motions to dismiss are brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall*, 935 F.2d at 1109. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The *Iqbal* evaluation requires two prongs of analysis. First, the Court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 679–81. Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at

681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 679.

## III.    Analysis

### a. Plaintiffs' Rule 15(d) Motion for Leave to File Supplemental Memorandum in Opposition to Defendants' Motion to Dismiss (ECF No. 66)

Although it was filed last chronologically, the Court will first address Plaintiffs' motion for leave to supplement their oppositions to the SEH Defendants and the Larimer County Defendants' motions to dismiss. Plaintiffs ask the Court to consider an expert report that was filed by an engineer in a related case in this district after briefing had concluded on the pending motions to dismiss. Plaintiffs cite Rule 15(d) for this request. However, by its own terms, Rule 15(d) applies to "supplemental pleadings." The only "pleadings" allowed under the Rules are a complaint; an answer to a complaint; an answer to a counterclaim designated as a counterclaim; an answer to a crossclaim; a third-party complaint; an answer to a third-party complaint; and, if the court orders one, a reply to an answer. *See* Fed. R. Civ. P. 7(a)(1)–(7). The relief sought by Plaintiffs cannot be granted under Rule 15.

Instead, the motion is more appropriately construed as a request to file a sur-reply. This district's Local Civil Rules do not address the filing of a sur-reply. *See* D.C.COLO.LCivR. 7.1(d) (describing the filing of a motion, response, and reply). "Courts in this district generally disfavor sur-replies and, consequently, permit them only in exceptional circumstances—e.g., when a reply brief raises new legal issues or relies on new facts." *Well Master Corp. v. Flowco Prod. Sols., LLC*, No. 21-cv-02145-CMA-KAS, 2023 WL 6808140, at *1 (D. Colo. Oct. 16, 2023).

Here, Plaintiffs do not identify any new facts or legal arguments raised in either set of Defendants' reply briefs that would justify permitting a sur-reply. Moreover, as Defendants note in their joint opposition, permitting the sur-reply would allow Plaintiffs to reopen the briefings to address the certificate of review issue for the *fourth* time. The motions to dismiss have been fully briefed and briefing will remain closed. Finally, the Court finds that the report in question would not be an adequate substitute for the statutorily required certificate of review anyway because it does not link the demolition of the Bridge to any negligent conduct on the part of the SEH Defendants. A sur-reply is not warranted under these circumstances, and the motion will be denied.

**b.  The SEH Defendants' Motion to Dismiss (ECF No. 43) and Plaintiffs' Motion for Order Finding Compliance with Certificate of Review Requirement (ECF No. 52)**

The SEH Defendants seek dismissal of Plaintiffs' negligence claim on two grounds. First, they argue that the claim is barred by the statute of limitations. Second, they assert that Colorado law requires Plaintiffs' claim for professional negligence be accompanied by a certificate of review. *See* ECF No. 43.

Plaintiffs' response brief focuses mainly on why their claim is not time-barred. *See* ECF No. 54. Their arguments relating to the certificate of service requirement are mostly contained in their separate motion asking for additional time and/or to be relieved from this obligation. ECF No. 52.

### i.  Statute of Limitations

The SEH Defendants argue that Colo. Rev. Stat. § 13-80-104, which sets forth the statute of limitations for actions against "architects, contractors, builders or builder vendors, engineers, inspectors, and others," applies to Plaintiffs' claim. That statute provides, in relevant part, that

> all actions against any architect, contractor, builder or builder vendor, engineer, or inspector performing or furnishing the design, planning, supervision, inspection, construction, or observation of construction of any improvement to real property shall be brought within the time provided in section 13-80-102 after the claim for relief arises, and not thereafter, but in no case shall such an action be brought more than six years after the substantial completion of the improvement to the real property.

Colo. Rev. Stat. § 13-80-104. Section 13-80-102, in turn, provides that tort actions, including actions for negligence, "must be commenced within two years after the cause of action accrues, and not thereafter." *Id.* 13-80-102(1)(a). Actions against engineers accrue "at the time the claimant . . . discovers or in the exercise of reasonable diligence should have discovered the physical manifestations of a defect in the improvement which ultimately causes the injury." *Id.* § 13-80-104(b)(I).

Plaintiffs argue that this case is not a construction defect suit and the general two-year statute of limitations for negligence set forth in Colo. Rev. Stat. § 13-80-102(1)(a) controls. Plaintiff claims that the demolition of the Bridge was not an "improvement to real property" and therefore section 13-80-104 is not applicable.

Given that both parties agree that the statute of limitations for Plaintiffs' claim is two years, this dispute really revolves around when such a claim accrues. The SEH Defendants contend that the claim accrued on August 4, 2021, the date the Bridge was demolished. According to the SEH Defendants, the September 12, 2023 Amended Complaint, which named the SEH Defendants for the first time, was untimely.

Plaintiffs, citing Colo. Rev. Stat. § 13-80-108(1), maintain that their negligence claim only accrued "on the date both the injury and its cause are known or should have been known by the exercise of reasonable diligence." They claim that they were not aware of the SEH Defendants tortious activities until they obtained documents in response to a Colorado Open Records Act request on April 28, 2022.

9

The Court finds that the SEH Defendants have the better argument. It is undisputed that the Bridge suffered damages and needed, at the very least, some repairs or modifications. According to the Amended Complaint, the SEH Defendants were retained to assess the overall condition of the Bridge "in terms of load carrying capacity, potential repair options, and potential for replacements." ECF No. 22 ¶ 44. Thus, Plaintiffs' claim is properly construed as an action against an engineer for negligently planning, designing, or inspecting an improvement to real property—the Bridge—and it squarely falls within § 13-80-104.

Plaintiffs state that "the demolition of the bridge was not an improvement in real property, but rather the destruction of it," and "therefore there was no defect in the improvement." This misunderstands the broad scope of § 13-80-104, which is meant "'provide comprehensive coverage to builders, contractors, and other construction-industry professionals.'" *Maryland Cas. Co. v. Formwork Servs., Inc.*, 812 F. Supp. 1127, 1131 (D. Colo. 1993) (quoting *Homestake Enters., Inc. v. Oliver*, 817 P.2d 979, 982 (Colo. 1991)). Thus, the legislature intended "'defect' to include a wide range of acts or events," including "'any and all actions in tort . . . for any deficiency in the design, planning, supervision, inspection, construction, or observation of construction of any improvement to real property.'" *Homestake*, 817 P.2d at 983 (quoting Colo. Rev. Stat. § 13-80-127(1)(c)(I)). This broad construction "is consistent with the legislature's intent to enact a statute of limitations to protect contractors and other professionals in the construction business from stale claims." *Id.* Plaintiffs claim plainly involves an allegedly deficient inspection of an improvement to real property, and therefore § 13-80-104 applies.

The Court also agrees with the SEH Defendants that Plaintiffs' negligence claim accrued the day the Bridge was demolished. Claims within the ambit of § 13-80-104 accrue when "the claimant or the claimant's predecessor in interest discovers or in the exercise of reasonable diligence should have discovered the *physical manifestations of a defect* in the improvement which ultimately causes the injury." Colo. Rev. Stat. § 13-80-104(1)(b)(I) (emphasis added). Accrual under this statute, therefore, "depends on the discovery of the *manifestation* of the defect and not its cause." *Broomfield Senior Living Owner, LLC v. R.G. Brinkmann Co.*, 2017 COA 31, ¶ 26, 413 P.3d 219, 226; *see also United Fire Grp. ex rel. Metamorphosis Salon v. Powers Elec., Inc.*, 240 P.3d 569, 573 (Colo. App. 2010) (holding that accrual date was the date of the building fire itself, and not the date the plaintiff discovered of the cause of the fire). The alleged defect in the SEH Defendants' inspection of the Bridge manifested itself was the Bridge was removed. Plaintiffs had two years after the demolition of the Bridge to bring a negligence claim against those involved in deciding to repair or destroy it. They failed to do so, and their claim is now time-barred.

### ii.    Certificate of Review

Colo. Rev. Stat. § 13-20-602(1)(a) states in relevant part that "in every action for damages or indemnity based upon the alleged professional negligence of . . . a licensed professional, the plaintiff's or complainant's attorney shall file with the court a certificate of review for each . . . licensed professional." Colo. Rev. Stat. § 13-20-602(1)(a). This

certificate must be executed by the plaintiff's attorney (or the plaintiff, if he or she is pro se),[3] and must declare that

> the attorney [or pro se plaintiff] has consulted a person who has expertise in the area of the alleged negligent conduct; and . . . [t]hat the professional . . . has reviewed the known facts, including such records, documents, and other materials which the professional has found to be relevant to the allegations of negligent conduct, and, based on the review of such facts, has concluded that the filing of the claim . . . does not lack substantial justification.

*Id*. § 13-20-602(3)(a). The certificate of review shall be filed within sixty days after the service of the complaint, counterclaim, or cross claim, unless the court determines that a longer period is necessary for good cause shown. *Id*. § 13–20–602(1)(a). In determining whether good cause exists to permit the late filing of a certificate of review, the Court shall consider: (1) whether the neglect causing the late filing was excusable; (2) whether the moving party has alleged a meritorious claim or defense; and (3) whether permitting the late filing would be consistent with equitable considerations, including any prejudice to the nonmoving party. *Corsentino v. Hub Int'l Ins. Servs., Inc*., No. 16-cv-01917-RM-STV, 2018 WL 582398, at *3 (D. Colo. Jan. 29, 2018) (citing *RMB Servs., Inc. v. Truhlar*, 151 P.3d 673, 676 (Colo. App. 2006)). A court may decline to accept a late certificate if the plaintiff fails to satisfy any of these criteria, as long as the court considers all three criteria. *RMB Servs., Inc*., 151 P.3d at 676. The Court is "guided by the general rule favoring resolution of disputes on their merits." *Id*.

Here, Plaintiffs point out that they are pro se parties and are not familiar with Colorado law. This is insufficient to establish excusable neglect. First, as noted, above,

---

[3] Pro se plaintiffs are not exempt from complying with the statute. *See Yadon v. Southward*, 64 P.3d 909, 912 (Colo. App. 2002).

at least one of the Plaintiffs appears to be a licensed attorney, albeit not one licensed in Colorado. Second, it is well-established that pro se status does not entitle litigants to an application of different rules, *see McNeil v. United States*, 508 U.S. 106, 113 (1993), and the requirements of the certificate of review statute apply to pro se plaintiffs. *Coleman v. United States*, No. 20-1403, 2021 WL 2835473, at *2 (10th Cir. July 8, 2021) (citing *Yadon*, 64 P.3d at 912). In other words, "ignorance of the law is not enough to demonstrate excusable neglect." *Krum v. Chubb Ltd*., No. 20-cv-03616-RM-GPG, 2022 WL 1558883, at *5 (D. Colo. Jan. 10, 2022), *report and recommendation adopted*, No. 20-cv-03616-RM-GPG, 2022 WL 1558885 (D. Colo. Feb. 10, 2022).

Second, and most importantly, Plaintiffs do not have a meritorious negligence claim against the SEH Defendants. First, this claim is time-barred. Second, Plaintiffs' purported damages stem from the allegedly unnecessary destruction of the Bridge on August 4, 2021. Plaintiffs allege that the SEH Defendants acted negligently by

> permitting Larimer County employees and/or officials to improperly and unprofessionally influence their opinions and conclusions regarding the condition of the Bridge, its repair capabilities, and influencing their decisions regarding the information to include in their various reports relating to the Bridge, and including Defendants improperly, negligently, and unprofessionally altering portions of one or more of their reports relating to the Bridge.

ECF No. 22 ¶ 108. But these acts all took place after the Bridge was demolished by Larimer County. Indeed, Plaintiffs allegations focus on the fact that the SEH Defendants' August 6, 2021 report did not recommend removal of the Bridge, but then Larimer County bullied the SEH Defendants into changing their opinions in the subsequent days. By then, however, the Bridge had already been removed, and Plaintiffs do not, and likely cannot, adequately plead any new or additional damages that were caused by the SEH Defendants' post-demolition conduct.

Given that Plaintiffs do not have a meritorious negligence claim, the Court also finds that equitable considerations, including prejudice to the SEH Defendants in having to further defend an untimely lawsuit, weigh against allowing Plaintiffs additional time to obtain a certificate of review. Accordingly, based on the foregoing and considering all three factors, this Court concludes that Plaintiffs have not established good cause for the late filing of a certificate of review.

In the alternative, Plaintiffs ask the Court in their motion to find that they have complied with the certificate of review requirement, in lieu of actually filing a certificate of review, because Plaintiff Wesley Hutchins states that he has spoken with a professional engineer familiar with the facts of the case who concluded that Plaintiffs' claim did not lack substantial justification. The Court might be persuaded under other circumstances, but given the current posture of this case, the Court declines Plaintiffs' invitation for two related reasons. First, the motion was filed after the expiration of the sixty-day deadline, and the Court has already found that Plaintiffs have not demonstrated good cause for extending this statutory period. Second, the motion states as follows:

> The professional engineer once again expressed his familiarity with the relevant known facts pertaining to the involvement of the SEH Defendants leading up to the demolition of the subject bridge, including but not limited to their negligent and even unethical revision of one or more of their reports, and the improper altering of one or more of their recommendations at the improper behest of County employees or representatives, including that the bridge was reparable.

ECF No. 52 at 4 ¶ 9. However, this statement does not track with the allegations made in the Amended Complaint. If Plaintiffs' claim was that the SEH Defendants improperly modified their report at the behest of Larimer County, and based on that report, Larimer County demolished the Bridge, this opinion might be considered an endorsement of that claim. But as discussed above, the SEH Defendants' allegedly negligent and unethical

conduct occurred *after* the demolition of the Bridge, not "leading up to the demolition of

Bridge." Therefore, this opinion does not cure the legal deficiency the Court identified

above regarding causation.

For these reasons, Plaintiffs' negligence claim against the SEH Defendants should

be dismissed.

### c. Larimer County Defendants' Motion to Dismiss Plaintiffs' Amended Complaint (ECF No. 47)

Next, the Court will discuss each of the five claims the Larimer County Defendants

argue should be dismissed.

### i. The Takings Claim

Plaintiffs allege that the demolition of the Bridge constituted a taking without just

compensation, in violation of the Fifth Amendment to the U.S. Constitution and Article II,

Section 15 of the Colorado Constitution. The federal Takings Clause prohibits the federal

government from "taking" private property "for public use without just compensation." U.S.

Const. amend. V. The Fourteenth Amendment extends that prohibition to state

governments. *See, e.g.*, *J.B. Ranch, Inc. v. Grand Cnty.*, 958 F.2d 306, 308 (10th Cir.

1992). Similarly, the Colorado Constitution provides, in relevant part, "[p]rivate property

shall not be taken or damaged, for public or private use, without just compensation." Colo.

Const. art. II, § 15.[4]

Not every destruction of private property by the government, however, is

considered a "taking" under the Fifth Amendment. In *Lech v. Jackson*, the Tenth Circuit

---

[4] Other than specific additional coverage for damages caused by government activity in areas adjacent to the landowner's land, the Colorado Takings Clause is interpreted consistent with the federal clause. *See Animas Valley Sand & Gravel, Inc. v. Bd. of Cnty. Comm'rs of Cnty. of La Plata*, 38 P.3d 59, 64 (Colo. 2001).

held that actions taken pursuant to the police power—as opposed to the eminent domain power—do not constitute takings and the property owner is not entitled to compensation. 791 F. App'x 711, 714 (10th Cir. 2019). In that case, the plaintiff homeowners brought a Fifth Amendment claim under 42 U.S.C. § 1983 against various police and law enforcement agencies after the agencies destroyed the innocent plaintiffs' home in the process of apprehending an armed criminal suspect. Chief Judge Brimmer granted summary judgment in the defendants' favor because the law enforcement officers were acting pursuant to the state's police powers, rather than the power of eminent domain. The Tenth Circuit affirmed. *Id.* at 718. In doing so, the court distinguished police power and the power of eminent domain: "the former controls the use of property by the owner for the public good, while the latter takes property for public use." *Id.* at 717. "[W]hen the state acts to preserve the safety of the public, the state is not, and, consistent with the existence and safety of organized society, cannot be, burdened with the condition that the state must compensate affected property owners for pecuniary losses they may sustain in the process." *Id.* (citation, quotations, and alterations omitted). "Thus, as unfair as it may seem, the Takings Clause simply does not entitle all aggrieved owners to recompense." *Id.* (citation, quotations, and alterations omitted).

With this guidance, the Court finds that Plaintiffs' Takings claim fails because they do not adequately allege that their personal property was taken for public use. In other words, Plaintiffs do not plead non-conclusory facts that show Larimer County was exercising its eminent domain power, rather than its police power, in removing the Bridge. Instead, the Amended Complaint establishes that "[d]ebris displaced one (1) of five (5) posts and tilted (one) of five (5) upright support posts on the North Pier of the Bridge,"

and "[t]he increased water flow scoured and undermined the South Concrete Pier of the Bridge, causing it to rotate and tip sideways, partially into the River." ECF No. 22 ¶¶ 39–40. The Amended Complaint further states that Larimer County engineers visually inspected the Bridge and noted that "the superstructure [was] currently stable but will become unstable if additional debris hits it." *Id.* ¶ 43. Plaintiffs also attached to their Amended Complaint pictures of the Bridge that show discernable damage. *See* ECF No. 22-1 at 10–11. Thus, Plaintiffs do not dispute that the Bridge was damaged and in need of repair—just that it did not need to be destroyed to ensure the safety of the public. Moreover, Plaintiffs allege that the demolition was done with the "ostensible" purpose of "protecting and safeguarding the property and lives of persons downstream from the Bridge." ECF No. 22 ¶ 90. Plaintiffs categorize this in a conclusory fashion as Larimer County using "eminent domain to serve a professed public use and purpose," but it is nearly the perfect example of a government exercising its broad police power authority "to provide for the public health, safety, and morals." *Lech*, 791 F. App'x at 718.

Plaintiffs urge the Court to reject reasoning in *Lech*, which Plaintiffs claim "has fallen under heavy criticism by numerous other courts and legal scholars alike," and to permit a takings claim in cases where the government exercises its police power. The Court is not persuaded, especially given Chief Judge Brimmer's careful and convincing analysis that the Tenth Circuit affirmed in *Lech*. Plaintiffs also argue that Larimer County's determination that the Bridge was an "imminent danger" was wrong. However, whether Larimer County was right or wrong in its decision to demolish the Bridge does not change the Court's conclusion that, given Plaintiffs' own allegations, Larimer County made that decision pursuant to its police, rather than eminent domain, power.

Plaintiffs have not alleged that any Larimer County's actions operated to convert their property to a public use. Accordingly, Plaintiffs' Takings claim should be dismissed.

## ii.    The Procedural and Substantive Due Process Claim

Plaintiffs allege that Larimer County's conduct "both procedurally and substantively denied Plaintiffs fair and reasonable notice, and fair and reasonable opportunity to be heard." ECF No. 22 ¶ 98. The Court agrees with Larimer County that Plaintiffs have not adequately pled a procedural or substantive due process claim.

The Due Process Clause of the Fourteenth Amendment forbids a state from depriving an individual "of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. The Due Process Clause encompasses two distinct forms of protection: (1) procedural due process, which requires a state to employ fair procedures when depriving a person of a protected interest; and (2) substantive due process, which guarantees that a state cannot deprive a person of a protected interest for certain reasons. *Hennigh v. City of Shawnee*, 155 F.3d 1249, 1253 (10th Cir. 1998) (citation omitted).

## 1.  Procedural Due Process

"To set forth an actionable procedural due process claim, a plaintiff must demonstrate: (1) the deprivation of a liberty or property interest and (2) that no due process of law was afforded." *Ripley v. Wyo. Med. Ctr., Inc.*, 559 F.3d 1119, 1122 (10th Cir. 2009) (quoting *Stears v. Sheridan Cnty. Mem'l Hosp. Bd. of Trs.*, 491 F.3d 1160, 1162 (10th Cir. 2007)).

Larimer County does not appear to contest that Plaintiffs had a property interest in being able to access their property via the Bridge. Instead, they argue that Plaintiffs' procedural due process claim fails because, according to the Amended Complaint,

Plaintiffs received notice of the decision to remove the Bridge and were given an opportunity to provide alternatives, although these alternatives were ultimately rejected. Larimer County also argues that Plaintiffs had an adequate post-deprivation remedy for inverse condemnation under Colorado law.

"The essence of procedural due process is the provision to the affected party of '*some* kind of notice and . . . *some* kind of hearing.'" *Moore v. Bd. of Cnty. Comm'rs of Cnty. of Leavenworth*, 507 F.3d 1257, 1259 (10th Cir. 2007) (quoting *Zinermon v. Burch,* 494 U.S. 113, 127 (1990)). "[T]he deprivation by state action of a constitutionally protected interest . . . is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." *Id.* (quoting *Zinermon,* 494 U.S. at 125).

Here, Plaintiffs had notice that Larimer County planned to demolish the Bridge. According to the Amended Complaint, they received the Notice of Imminent Danger, Notice of Demolition, and Order of Demolition on July 28, 2021. The Notice of Imminent Danger informed Plaintiffs that they had the right to appeal within 15 days, or by August 12, 2021. Plaintiffs allege that they were precluded from doing so because the Bridge was demolished on August 4, 2021. "It is well established, however, that a state's violation of its own laws does not create a claim under § 1983." *Rector v. City & Cnty. of Denver*, 348 F.3d 935, 947 (10th Cir. 2003). Larimer County's failure to follow the appeals procedure set forth in the notice is only actionable if, by doing so, it failed to meet basic federal constitutional standards. *See id.* "Due process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). "To fulfill notice requirements, constitutional due process requires only that parties

be informed in a matter reasonably calculated to apprise them of the pending action and provide an opportunity to respond." *Rector*, 348 F.3d at 948.

According to the Amended Complaint, Plaintiffs were given the opportunity to propose to Larimer County alternatives to demolition.

> Such alternatives proposed by Plaintiffs included, but were not necessarily limited to, repairing the Bridge to a one-lane structure that would include vehicle traffic, or repairing the Bridge sufficiently to function safely as a foot-bridge permitting Plaintiffs and other property owners to have walk-in access to their properties, at least on a temporary basis.

ECF No. 22 ¶ 59. But Plaintiffs allege that "Defendant's representatives refused to consider Plaintiffs' alternatives to the complete demolition of the Bridge, and went forward with its physical entry onto Plaintiffs' private Bridge, and its physical removal on August 4, 2021." *Id.* ¶ 58. Thus, Plaintiffs were given notice and an opportunity to be heard prior to the Bridge's removal sufficient to satisfy the Due Process Clause. This is particularly true in light of the demands of the particular situation, where Larimer County officials deemed the Bridge to be an imminent danger to human life and property due to its unsafe condition. *See Miller v. Campbell Cnty.*, 945 F.2d 348, 353 (10th Cir. 1991) ("[W]here the state is confronted with an emergency, it may deprive an individual of his or her property without first providing a hearing."). Plaintiffs' procedural due process claim should be dismissed.

## 2. Substantive Due Process

"Claims for 'substantive due process' find their basis in the Fourteenth Amendment's protections against arbitrary government power." *Lindsey v. Hyler*, 918 F.3d 1109, 1115 (10th Cir. 2019) (citing *Browder v. City of Albuquerque*, 787 F.3d 1076, 1078–80 (10th Cir. 2015)). A substantive due process violation can be established by either: (1) "legislative acts that infringe on a fundamental right;" or (2) "official conduct that

deprives a person of life, liberty, or property in a manner so arbitrary as to shock the judicial conscience." *Id*. (citation omitted).

> To be conscience shocking, a defendant's behavior must lack "any reasonable justification in the service of a legitimate governmental objective." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). Further, "[f]or executive action to shock the conscience requires much more than mere negligence." *Halley* [*v. Huckaby*], 902 F.3d [1134,] 1155 [10th Cir. 2018]. "Conduct that shocks the judicial conscience is deliberate government action that is arbitrary and unrestrained by the established principles of private right and distributive justice." *Id*. (quoting *Hernandez v. Ridley*, 734 F.3d 1254, 1261 (10th Cir. 2013) (internal quotation marks omitted). "To show a defendant's conduct is conscience shocking, a plaintiff must prove a government actor arbitrarily abused his authority or employed it as an instrument of oppression." *Id*. (quoting *Hernandez*, 734 F.3d at 1261) (internal quotation marks omitted). "The behavior complained of must be egregious and outrageous." *Id*. (quoting *Hernandez*, 734 F.3d at 1261) (internal quotation marks omitted).

*Bruce v. Ogden City Corp.*, No. 22-4114, 2023 WL 8300363, at *15 (10th Cir. Dec. 1, 2023).

Plaintiffs do not plausibly allege that Larimer County officials acted egregiously or outrageously in deciding to demolish the Bridge, or that the decision lacked any reasonable justification in the service of a legitimate governmental objective. *See, e.g.*, *Harris v. City of Akron,* 20 F.3d 1396, 1405 (6th Cir. 1994) ("So far as we know, or have been informed, no court has held that it shocks the conscience for municipal authorities, acting pursuant to an unchallenged ordinance, to order the destruction of a building found by responsible officers to be a nuisance or threat to public health or safety."). Plaintiffs' allegation that Larimer County "rushed to an unreasonable and unsupported finding of 'imminent danger' without performing critical and necessary tasks to arrive at such a conclusion" describes, at the very most, negligent conduct, which is legally insufficient to state a claim for substantive due process.

### iii.    The "Willful and Wanton Conduct" Claim

Plaintiffs bring a claim for "willful and wanton conduct" against Defendants Hodges and Fay. This claim should be dismissed because Colorado law does not recognize an independent cause of action for willful and wanton conduct. *See Ramsay v. Frontier, Inc.*, No. 19-cv-03544-CMA-NRN, 2020 WL 4557545, at *8–9 (D. Colo. July 30, 2020) (dismissing such a claim), *report and recommendation adopted*, No. 19-cv-03544-CMA-NRN, 2021 WL 651021 (D. Colo. Feb. 19, 2021); *Carani v. Meisner*, 2009 WL 2762719, at *4 (D. Colo. Aug. 26, 2009) (same). Plaintiffs "acknowledge that there is some support in the case law for the general proposition that a claim of willful and wanton conduct is not an independent cause of action recognized in Colorado." ECF No. 63 at 14. Nevertheless, they ask the Court to create new state tort law that says otherwise. This request should be denied.

### iv.    Claim for Declaratory Relief

The Amended Complaint asserts a claim against Larimer County for the mandatory replacement of the Bridge "in accordance with established law." ECF No. 22 ¶ 115. However, as set forth above, Plaintiffs cannot maintain a claim against Larimer County for the demolition of the Bridge, so this request for injunctive relief necessarily fails as well.

### v.    The "Discretionary Remedies" Claim

Finally, Plaintiffs ask the Court to fashion a legal or equitable remedy for the damages they suffered. They cite *Biven v. Six Unknown Named Agents*, 403 U.S. 388 (1971), for the "legal maxim that equity will not suffer a wrong to be without a remedy." But Plaintiffs have not plausibly alleged that they suffered a compensable "wrong," and it

is unclear who would be responsible for providing the remedy. This claim should be dismissed.

## IV.    Conclusion

For the foregoing reasons, it is hereby **ORDERED** that Plaintiffs' Rule 15(d) Motion for Leave to File Supplemental Memorandum in Opposition to Defendants' Motion to Dismiss (ECF No. 66) is **DENIED**.

It is further **RECOMMENDED** that:

- The SEH Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6), ECF No. 43, be **GRANTED**;

- The Larimer County Defendants' Motion to Dismiss Plaintiffs' Amended Complaint, ECF No. 47, be **GRANTED**; and

- Plaintiffs' Amended Verified Motion for Order Finding Compliance with Certificate of Review Requirement, ECF No. 52, be **DENIED**.


**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case. A party may respond to another party's objections within fourteen (14) days after being served with a copy. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, *Thomas v. Arn*, 474 U.S. 140, 148-53 (1985),**

and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).

s/ James P. O'Hara

Dated:      August 23, 2024
            Denver, Colorado                James P. O'Hara
                                            United States Magistrate Judge