IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 23-cv-01819-PAB-JPO

WESLEY D. HUTCHINS,
CAROL A. SQUIRES,
KURT T. SQUIRES,
LINDA L. JONES, and
BRUCE B. HUTCHINS,

      Plaintiffs,

v.

BOARD OF COUNTY COMMISSIONERS OF LARIMER COUNTY, COLORADO,
LORI HODGES, in her official capacity as an employee of Larimer County,
MORGAN FAY, in her official capacity as an employee of Larimer County,
STEVE KAYE,
SHORT-ELLIOTT-HENDRICKSON, INC., a Minnesota corporation,
JOHN AND JANE DOES I THROUGH XX, and
ABC CORPORATIONS I THROUGH XX,

      Defendants.

_____

**ORDER**
_____

      This matter is before the Court on the Order and Recommendation of United

States Magistrate Judge [Docket No. 70].  The recommendation addresses the following

motions: Defendants Short-Elliott-Hendrickson, Inc. and Steve Kaye's Motion to Dismiss

Pursuant to Fed. R. Civ. P. 12(b)(6) [Docket No. 43]; the Larimer County Defendants'

Motion to Dismiss Plaintiffs' Amended Complaint (ECF 22) [Docket No. 47]; Plaintiffs'

Amended Verified Motion for Order Finding Compliance with Certificate of Review

Requirement [Docket No. 52]; and Plaintiffs' Rule 15(d) Motion for Leave to File

Combined Supplemental Memorandum in Opposition to Defendants' Motions to Dismiss

[Docket No. 66].  *See* Docket No. 70 at 1-2.  The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

I.     **BACKGROUND**

A.   **Factual Background**[1]

Plaintiffs Wesley D. Hutchins, Carol A. Squires, Kurt T. Squires, Linda L. Jones, and Bruce B. Hutchins (collectively, the "plaintiffs") jointly own a cabin and land (the "property") located on 94 Profile Rock Road in Larimer County, Colorado (the "County"). Docket No. 22 at 8-9, ¶¶ 20-23.  Defendant Board of County Commissioners of Larimer County, Colorado (the "Board") is a political subdivision of the State of Colorado and is the governing entity for the County.  *Id*. at 9, 11, ¶¶ 24, 30.  Defendant Lori Hodges is the director of the County's Office of Emergency Management.  *Id*. at 9, ¶ 25. Defendant Morgan Fay is a project manager and engineer for the County's Engineering Department.  *Id*. at 9-10, 12, ¶¶ 26, 43.  Defendant Steve Kay is a professional engineer employed by defendant Short-Elliott-Hendrickson, Inc. ("SEH"), a private engineering corporation.  *Id*. at 4, 10, ¶¶ 5, 27, 28.

Plaintiffs' property is located on the south side of the Cache La Poudre River (the "River").  *Id*. at 5, ¶ 8.  Before July 20, 2021, the only method for accessing plaintiffs' property was through a one-lane private bridge (the "Bridge") across the River, which connected plaintiffs' property and several other properties to Colorado Highway 14.  *Id*. at 3, 5, 12, ¶¶ 1, 7-8, 34; *see also* Docket No. 22-1 at 8.  The Bridge was supported by

---

[1] The facts below are taken from plaintiffs' amended complaint, Docket No. 22, and are presumed to be true for purposes of ruling on defendants' motions to dismiss. *See Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011).

two piers: a North Pier and a concrete South Pier.  Docket No. 22 at 12, ¶¶ 36, 40.  The Bridge was constructed sometime in the 1940s.  *Id.*, ¶ 35.

On July 20, 2021, a rainstorm caused debris and excess water to flow down the River, which caused damage to the Bridge.  *Id.* at 4, 11-12, ¶¶ 6, 32, 37-38.  Debris "displaced" one of five posts and "tilted" one of five upright support posts on the North Pier.  *Id.* at 12, ¶ 39.  "The increased water flow scoured and undermined the South Concrete Pier of the Bridge, causing it to rotate and tip sideways, partially into the River."  *Id.*, ¶ 40.  Although the Bridge remained standing, there was a "visible vertical dip" in the Bridge of less than a "4% gradient or incline."  *Id.*, ¶¶ 40-41; *see also* Docket No. 22-1 at 10.

On July 21, 2021, the Board retained SEH to "assess the damage to the Bridge and two neighboring bridges."  Docket No. 22 at 12, ¶ 42.  That same day, Ms. Fay visually inspected the Bridge and issued an assessment noting that the "superstructure [was] currently stable but will become unstable if additional debris hits it."  *Id.* at 12-13, ¶ 43.  Ms. Fay's assessment recommended removal of the Bridge or "further investigation . . . to determine if the structure can be temporarily stabilized," noting the risk of possible downstream damage if additional debris hit the Bridge.  *Id.*; *see also* Docket No. 22-1 at 12-17.

On July 23, 2021, Mr. Kaye and another SEH engineer visited the Bridge to assess "load carrying capacity, potential repair options, and potential for replacements."  Docket No. 22 at 13, ¶ 44.  "SEH concurred with [the County's] recommendation to prohibit vehicle traffic on the Bridge and to remove the current structure and debris pile,

depending upon further investigation and analysis." *Id*.; *see also* Docket No. 22-1 at 18-20.

On July 28, 2021, the County's Code Compliance Supervisor Amy White issued a Notice of Imminent Danger, pursuant to Section 109 of the County's Property Maintenance Code. Docket No. 22 at 13, ¶ 45; *see also* Docket No. 22-1 at 21-27. The Notice of Imminent Danger concluded that, if additional debris hit the Bridge, the Bridge could break into pieces, creating risks to other bridges downstream. Docket No. 22 at 13, ¶ 45. The Notice of Imminent Danger stated that

> Repair of the [Bridge] is not feasible. To leave an existing 3-span bridge in the [waterway] that may sustain further damage due to additional flooding or debris flow from black Hollow area creates life-safety and property damage issues. To attempt to retrofit a new superstructure on top of an already deteriorated concrete substructure is problematic. As well, the cost to repair the existing structure may be considerable and nearly the same cost as constructing a full replacement which meets or exceed waterway conveyance requirements and removes inherent risk that piers pose in the water.

*Id*. at 14, ¶ 46 (quoting Docket No. 22-1 at 23). The Notice of Imminent Danger prohibited use of the Bridge by plaintiffs and other individuals. *Id*., ¶ 47. The notice stated that any affected person "shall have the right to appeal to the Larimer County Board of Appeals" within 15 days. *Id*. The appeal deadline was therefore August 12, 2021. *Id*., ¶ 48. Plaintiffs allege that the Notice of Imminent Danger contains many false, inaccurate, and misleading statements. *Id*. at 14-15, ¶ 49.

On July 28, 2021, simultaneous with issuing the Notice of Imminent Danger, Ms. White issued (1) a Notice of Demolition, stating that the Bridge would be demolished between July 29 and August 3, 2021; and (2) an Order for Demolition, ordering the demolition of the Bridge to begin on July 29, 2021. *Id*. at 16-17, ¶¶ 51, 54; *see also*

Docket No. 22-1 at 3-6, 28-30.  The Notice of Demolition and Order for Demolition stated that no interested party had filed an appeal.  Docket No. 22 at 16-17, ¶¶ 52, 55.

Around July 27, 2021, another property owner in the area, who is known by the single name of Astrid, provided the Board with a stabilization plan prepared by an engineer.  *Id*. at 17, ¶ 56.[2]  Plaintiffs also proposed several alternatives to demolishing the Bridge, including temporarily repairing the Bridge for foot-traffic only.  *Id*. at 18, ¶ 59. However, the County "refused to consider" those plans and demolished the Bridge on August 4, 2021.  *Id*., ¶ 58.  Plaintiffs "intended" to file an appeal with the Larimer County Board of Appeals, but the County demolished the Bridge before plaintiffs could file the appeal.  *Id*. at 23, ¶ 77.  Plaintiffs allege that the demolition was improper because the Bridge "was highly repairable within a relatively short period of time" and the Bridge was not an "imminent danger."  *Id*. at 5, 16, ¶¶ 10, 53.  The Board has not provided any compensation to plaintiffs for demolishing the Bridge.  *Id*. at 6, ¶ 13.

On August 6, 2021, after the demolition of the Bridge, SEH issued a "more detailed report" of its inspection findings, recommending (after the fact) that the Bridge should not be used until repairs were made to restore the load carrying capacity.  *Id*. at 19, ¶¶ 62-63.  SEH did not recommend "removal of the Bridge" in this report, but stated that a more detailed assessment of the Bridge's structural elements should be performed after removing the debris.  *Id*., ¶¶ 63-64.  Plaintiffs allege that Ms. Fay improperly influenced SEH to alter its August 6 report.  *Id*., ¶ 65.  On August 13, 2021 SEH issued a final report, which recommended that the Bridge should be "replaced or

---

[2] On July 19, 2023, Astrid filed a separate lawsuit against the Board and that case is currently pending before this Court.  *See Astrid v. Bd. of Cnty. Comm'rs of Larimer Cnty. Colo*., Case No. 23-cv-02051-PAB-JPO.

repaired in accordance with current Larimer County private vehicular bridge requirements." *Id*. at 20, ¶¶ 67-68; *see also* Docket No. 22-1 at 67-72.

### B. Procedural History

Plaintiffs originally filed this case against the Board in the District Court for Larimer County, Colorado on June 22, 2023, *see* Docket No. 4, and the Board removed the case to this Court on July 18, 2023.  Docket No. 1.  On September 12, 2023, plaintiffs filed an amended complaint, adding Ms. Hodges, Ms. Fay, Mr. Kaye, and SEH as defendants.  Docket No. 22.  The amended complaint asserts the following claims: (1) an "Eminent Domain/Inverse Condemnation" claim against the Board under the Fifth Amendment of the U.S. Constitution and Article II, Section 15 of the Colorado Constitution; (2) a "Substantive and Procedural" due process claim against the Board under the Fourteenth Amendment of the U.S. Constitution and Article II, Section 25 of the Colorado Constitution; (3) a "Willful and Wanton Conduct" claim against Ms. Hodges and Ms. Fay; (4) a negligence claim against Mr. Kaye and SEH; (5) a "Declaratory Judgment/Specific Performance" claim against the Board; and (6) a "Discretionary Remedies" claim.  *Id*. at 27-34, ¶¶ 85-119.

On November 13, 2023, SEH and Mr. Kaye (collectively, the "SEH defendants") filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), arguing that plaintiffs' negligence claim was barred under the statute of limitations and that plaintiffs failed to file the required certificate of review under Colo. Rev. Stat. § 13-20-602.  Docket No. 43. On November 17, 2023, the Board, Ms. Fay, and Ms. Hodges (collectively, the "County defendants") filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), arguing that plaintiffs failed to plausibly state a takings, procedural due process, or substantive due

process claim, and that the Court should dismiss the "willful and wanton" claim, injunctive relief claim, and discretionary remedies claim as a matter of law.  Docket No. 47.

On November 30, 2023, plaintiffs filed a motion requesting that the Court issue an order finding that plaintiffs "complied with the certificate of review requirements" for their negligence claim or extending the deadline for filing the certificate.  Docket No. 52.  On February 21, 2024, plaintiffs filed a motion for leave to file a "supplemental memorandum" in opposition to defendants' motions to dismiss pursuant to Fed. R. Civ. P. 15(d), asking the Court to consider an expert report prepared by engineer Geoffrey Robinson.  Docket No. 66.

On August 23, 2024, Magistrate Judge James P. O'Hara issued an order and recommendation in this case.  Docket No. 70.  Judge O'Hara denied plaintiffs' motion for leave to file a supplemental memorandum.  *Id*. at 7-8.  Judge O'Hara recommends granting the defendants' motions and dismissing all of plaintiffs' claims.  *Id*. at 8-23.[3]  Judge O'Hara also recommends denying plaintiffs' certificate of review motion.  *Id*. at 23.  The recommendation stated that any objections must be filed within fourteen days after service on the parties.  *Id*. at 23-24.  Plaintiffs filed an objection on September 9, 2024.  Docket No. 77.[4]  On September 13, 2024, the County defendants and SEH defendants filed responses to the objection.  Docket Nos. 79, 80.

---

[3] The recommendation does not state whether the claims should be dismissed with prejudice or without prejudice.

[4] Plaintiffs requested an extension of time to file an objection, Docket No. 75, and the Court granted the motion in part, permitting plaintiffs to file an objection on or before September 9, 2024 at 5:00 p.m.  Docket No. 76.  The Court notes that plaintiffs filed the objection at 5:24 p.m. on September 9, 2024.  Docket No. 77.  Plaintiffs provide no explanation why they filed the objection after the deadline.  However, the County

## II.   LEGAL STANDARD

### A.  Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must allege enough factual matter that, taken as true, makes the plaintiff's "claim to relief . . . plausible on its face."  *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "The 'plausibility' standard requires that relief must plausibly follow from the facts alleged, not that the facts themselves be plausible."  *RE/MAX, LLC v. Quicken Loans Inc.*, 295 F. Supp. 3d 1163, 1168 (D. Colo. 2018) (citing *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008)).  Generally, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'"  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555) (alterations omitted).  A court, however, does not need to accept conclusory allegations.  *See, e.g.*, *Hackford v. Babbit*, 14 F.3d 1457, 1465 (10th Cir. 1994) ("we are not bound by conclusory allegations, unwarranted inferences, or legal conclusions.").

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quotations and alterations omitted); *see also Khalik*, 671 F.3d at 1190 ("A plaintiff must nudge [his] claims across the line from conceivable to plausible in order to survive a motion to

---

defendants and SEH defendants do not argue that the objection is untimely.  *See* Docket Nos. 79, 80.  Therefore, the Court will consider the objection as timely filed.

dismiss." (quoting *Twombly*, 550 U.S. at 570)).  If a complaint's allegations are "so general that they encompass a wide swath of conduct, much of it innocent," then plaintiff has not stated a plausible claim.  *Khalik*, 671 F.3d at 1191 (quotations omitted).  Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory."  *Bryson*, 534 F.3d at 1286 (alterations omitted).

### B.  Objections on Dispositive Matters

For dispositive motions, the Court must "determine de novo any part of the magistrate judge's disposition that has been properly objected to."  Fed. R. Civ. P. 72(b)(3).  An objection is "proper" if it is both timely and specific.  *United States v. One Parcel of Real Prop. Known as 2121 E. 30th St.*, 73 F.3d 1057, 1059 (10th Cir. 1996) ("*One Parcel*").  A specific objection "enables the district judge to focus attention on those issues – factual and legal – that are at the heart of the parties' dispute."  *Id.*

In the absence of an objection, the district court may review a magistrate judge's recommendation under any standard it deems appropriate.  *See Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991); *see also Thomas v. Arn*, 474 U.S. 140, 150 (1985) ("It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings.").  The Court therefore reviews the non-objected to portions of a recommendation to confirm there is "no clear error on the face of the record."  Fed. R. Civ. P. 72(b), Advisory Committee Notes.  This standard of review is something less

than a "clearly erroneous" or "contrary to law" standard of review, Fed. R. Civ. P. 72(a),

which in turn is less than a de novo review.  Fed. R. Civ. P. 72(b).

### C. Objections on Non-Dispositive Matters

The district court reviews a magistrate judge's order on a non-dispositive motion

under a "clearly erroneous or contrary to law" standard.  28 U.S.C. § 636(b)(1)(A); Fed.

R. Civ. P. 72(a).  Under this standard of review, a magistrate judge's finding should not

be rejected merely because the Court would have decided the matter differently.  *See*

*Anderson v. City of Bessemer*, 470 U.S. 564, 573 (1985).  The clearly erroneous

standard requires a district court to affirm a magistrate judge's decision unless, "on the

entire evidence[, the district court] is left with the definite and firm conviction that a

mistake has been committed."  *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1464

(10th Cir. 1988) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948));

*see also Allen v. Sybase, Inc.*, 468 F.3d 642, 658 (10th Cir. 2006).  "Under the 'contrary

to law' standard, the reviewing court sets aside the magistrate order only if it applied an

incorrect standard or applied the appropriate legal standard incorrectly."  *Swan Glob*.

*Invs., LLC v. Young*, No. 18-cv-03124-CMA-NRN, 2019 WL 2171457, at *3 (D. Colo.

May 17, 2019) (internal quotations, alterations, and citations omitted).  Because

plaintiffs are proceeding pro se,[5] the Court will construe their objections and pleadings

---

[5] Although plaintiffs are proceeding pro se, the Court notes that one plaintiff, Wesley D. Hutchins, is an attorney licensed in the State of Utah.  *See* Docket No. 75 at 2 (noting that "Wesley D. Hutchins, recently reinstated to practice law in the State of Utah, [is] employed with the Salt Lake City, Utah law firm Christensen Law").  A pro se litigant's "status as a licensed attorney reduces the deference to which he is entitled as a pro se litigant."  *Baldwin v. United States*, No. 11-cv-02033-MSK-KLM, 2012 WL 7051296, at *1 n.1 (D. Colo. Sept. 17, 2012), *recommendation adopted*, 2013 WL 500407 (D. Colo. Feb. 11, 2013) (citing *Smith v. Plati*, 258 F.3d 1167, 1174 (10th Cir. 2001)).

liberally without serving as their advocate.  *See Hall v. Bellmon*, 935 F.2d 1106, 1110

(10th Cir. 1991).

### III.   ANALYSIS

The Court construes plaintiffs' filing as raising nine objections.  *See* Docket No.

77 at 2-14.

### A.  Objection One

Plaintiffs' first objection states that they "do not object" to the background section

of the recommendation,

> except as to any relevant portions of Plaintiffs' *Amended Complaint*, containing
> 84 detailed paragraphs of factual allegations (and 97 pages of exhibits, A through
> Q, bates numbered 001 to 095), which are not referenced, discussed, or
> analyzed in the [recommendation] – which is the vast majority thereof.  The
> [recommendation] only partially references, in three (3) pages, the facts set forth
> in Plaintiffs' 36-page *Amended Complaint*.

*Id*. at 2 (citing Docket No. 70 at 3-5).

Plaintiffs' first objection is not specific because it provides no explanation why the

factual or legal conclusions in the recommendation are erroneous.  *See One Parcel*, 73

F.3d at 1059 (discussing how a specific objection "enables the district judge to focus

attention on those issues – factual and legal – that are at the heart of the parties'

dispute").  Plaintiffs do not identify any specific allegations in the amended complaint or

the attached exhibits that Judge O'Hara purportedly failed to consider.  Accordingly, the

Court overrules plaintiffs' first objection.  *See Jones v. United States*, No. 22-cv-02854-

PAB-MDB, 2024 WL 358098, at *3 (D. Colo. Jan. 31, 2024) ("Objections disputing the

correctness of the magistrate's recommendation, but failing to specify the findings

believed to be in error are too general and therefore insufficient." (quoting *Stamtec, Inc.*

*v. Anson*, 296 F. App'x 518, 520 (6th Cir. 2008) (unpublished))); *see also Barnes v.*

*Omnicell*, 2024 WL 2744761, at *4 (10th Cir. May 28, 2024) (affirming district court's conclusion that plaintiff's "objections were not sufficiently specific to focus the district court's attention on the legal and factual issues because he failed to identify the parts of the recommendation that contained the alleged lies").

### B.  Objection Two

Plaintiffs' second objection asserts that the magistrate judge failed to properly apply the Rule 12(b)(6) standard to "the well-[pled] facts of this case."  Docket No. 77 at 2.  Plaintiffs contend that "the Court has more than sufficient evidence to draw the reasonable inference the Defendants are liable for their misconduct" from plaintiffs' "33-page *Amended Complaint*, containing 84 detailed paragraphs of factual allegations (and 97 pages of exhibits, A through Q, bates numbered 001 to 095)." *Id*. at 4.  Moreover, plaintiffs assert that the recommendation "does not address the general disfavor for which Rule 12(b)(6) motions are granted due to them being a drastic remedy." *Id*. at 3.

Plaintiffs' second objection is not specific because it provides no explanation why the factual or legal conclusions in the recommendation are erroneous. *See One Parcel*, 73 F.3d at 1059.  For example, plaintiffs do not explain how the magistrate judge purportedly failed to apply the Rule 12(b)(6) standard to any particular claim or set of allegations.  Accordingly, the Court overrules plaintiffs' second objection. *See Jones*, 2024 WL 358098, at *3.

### C.  Objection Three

Plaintiffs object to the magistrate judge's denial of their motion for leave to file a supplemental memorandum.  Docket No. 77 at 4.  The supplemental memorandum contained an expert report from Geoffrey Robinson assessing the damage to the

Bridge.  *See* Docket No. 66 at 19-36.  Although plaintiffs filed the motion pursuant to Fed. R. Civ. P. 15(d), Judge O'Hara construed plaintiffs' motion as a request to file a sur-reply because Rule 15(d) governs "supplemental pleadings," not briefings.  Docket No. 70 at 7.  Judge O'Hara explained that "Courts in this district generally disfavor sur-replies and, consequently, permit them only in exceptional circumstances—e.g., when a reply brief raises new legal issues or relies on new facts."  *Id.* (quoting *Well Master Corp. v. Flowco Prod. Sols., LLC*, No. 21-cv-02145-CMA-KAS, 2023 WL 6808140, at *1 (D. Colo. Oct. 16, 2023)).  Judge O'Hara found that plaintiffs did "not identify any new facts or legal arguments raised in either set of Defendants' reply briefs that would justify permitting a sur-reply" and therefore denied the motion.  *Id.* at 8.  Plaintiffs argue that the magistrate judge should have permitted "the filing of the expert report" under "the exceptional circumstances provision that permits filing a sur-reply" because Mr. Robinson's report "was not previously available" to plaintiffs.  Docket No. 77 at 4.

A motion requesting leave to file a sur-reply is a non-dispositive matter.  *See Lazarov v. Kimmel*, No. 10-cv-01238-CMA, 2011 WL 165180, at *3 (D. Colo. Jan. 18, 2011).  As a result, the Court will review Judge O'Hara's order denying plaintiffs' motion for leave to file a sur-reply under the clearly erroneous or contrary to law standard.  *See* 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a).

Although plaintiffs object to Judge O'Hara's order, plaintiffs do not argue that the order is clearly erroneous or contrary to law.  *See* Docket No. 77 at 4.  Neither the Federal Rules of Civil Procedure nor this District's Local Rules allow for sur-replies as a matter of right.  *Carlson v. Colo. Ctr. for Reprod. Med., LLC*, 341 F.R.D. 266, 276 (D. Colo. 2022).  Rather, "[g]ranting leave to file a surreply is part of the supervision of

litigation and thus falls within the discretion of the district court." *Hartman v. Harrison Sch. Dist. Two*, No. 17-cv-01133-PAB-SKC, 2019 WL 142121, at *6 n.8 (D. Colo. Jan. 9, 2019). The district court "abuses its discretion only when it both denies a party leave to file a surreply *and* relies on new materials or new arguments in the opposing party's reply brief." *Conroy v. Vilsack*, 707 F.3d 1163, 1179 n.6 (10th Cir. 2013). The Court finds that Judge O'Hara applied the correct legal standard for deciding whether to grant leave to file a sur-reply. Furthermore, under the clearly erroneous standard, the Court is not "left with the definite and firm conviction that a mistake has been committed." *See Ocelot Oil Corp.*, 847 F.2d at 1464. Plaintiffs do not argue that the sur-reply would address any "new materials or new arguments in the opposing party's reply brief." *See Conroy*, 707 F.3d at 1179 n.6. As a result, the Court overrules the third objection.

### D. Objection Four

Plaintiffs object to the magistrate judge's recommendation to dismiss the first claim. Docket No. 77 at 9-11. Plaintiffs' first cause of action asserts a takings claim against the Board under the Fifth Amendment of the U.S. Constitution and Article II, Section 15 of the Colorado Constitution. Docket No. 22 at 27-29, ¶¶ 85-94. The Fifth Amendment's takings clause, applied to the states through the Fourteenth Amendment, *see J.B. Ranch, Inc. v. Grand Cnty.*, 958 F.2d 306, 308 (10th Cir. 1992), provides that "private property" shall not "be taken for public use, without just compensation." U.S. Const. Amend. V. The Colorado takings clause provides that "[p]rivate property shall not be taken or damaged, for public or private use, without just compensation." Colo.

Const. Art. II, § 15.[6]  "The government commits a physical taking when it uses its power of eminent domain to formally condemn property" or "take[] possession of property without acquiring title to it."  *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 147 (2021); *see also Forest View Co. v. Town of Monument*, 464 P.3d 774, 778 (Colo. 2020) ("A taking occurs when a government entity clothed with the power of eminent domain substantially deprives a property owner of the use and enjoyment of that property." (internal alterations and citation omitted)).

However, when the government "acts pursuant to its police power, rather than the power of eminent domain, its actions do not constitute a taking for purposes of the Takings Clause."  *Lech v. Jackson*, 791 F. App'x 711, 717 (10th Cir. 2019) (unpublished) (applying federal and Colorado law); *see also City & Cnty. of Denver v. Desert Truck Sales, Inc.*, 837 P.2d 759, 766-67 (Colo. 1992) ("Police power should not be confused with eminent domain, in that the former controls the use of property by the owner for the public good, authorizing its regulation and destruction without compensation, whereas the latter takes property for public use and compensation is given for property taken, damaged or destroyed." (quoting *Lamm v. Volpe*, 449 F.2d 1202, 1203 (10th Cir. 1971)); *Young v. Larimer Cnty. Sheriff's Off.*, 356 P.3d 939, 944

---

[6] The Colorado Supreme Court has generally "interpreted the Colorado takings clause as consistent with the federal clause."  *Animas Valley Sand & Gravel, Inc. v. Bd. of Cnty. Comm'rs of Cnty. of La Plata*, 38 P.3d 59, 64 (Colo. 2001).  As a result, the Court may consider the claims together and "look to both Colorado and federal case law for guidance."  *See id.*; *see also McIntyre v. Bd. of Cnty. Comm'rs of Cnty. of Gunnison, Colo.*, No. 06-cv-00401-REB, 2007 WL 926883, at *3 n.6 (D. Colo. Mar. 26, 2007), *aff'd*, 252 F. App'x 240 (10th Cir. 2007) (unpublished) ("Because the Colorado takings clause is consistent with, and at least as broad as, the Fifth Amendment Takings clause, federal caselaw is instructive in deciding inverse condemnation claims under the Colorado Constitution.").

(Colo. App. 2014) (explaining that property seized pursuant to the government's "police power" does not state an inverse condemnation claim under the Colorado Constitution); *Patty v. United States*, 136 Fed. Cl. 211, 213 (2018) ("The Supreme Court has long taught that the [federal] Takings Clause is not implicated when the government exercises its police power."). Although the boundaries of the police power are "difficult to discern," the police power generally encompasses "the authority to provide for the public health, safety, and morals." *Lech*, 791 F. App'x at 718 (citations omitted). In contrast, eminent domain "takes property for public use." *Id.* (quoting *Lamm*, 449 F.2d at 1203).

Judge O'Hara recommends dismissing plaintiffs' federal and state takings claim because the amended complaint does "not adequately allege that their personal property was taken for public use." Docket No. 70 at 16. Judge O'Hara found that the amended complaint did not plead any non-conclusory facts that the County was "exercising its eminent domain power, rather than its police power, in removing the Bridge." *Id.* "Instead, the Amended Complaint establishes that '[d]ebris displaced one (1) of five (5) posts and tilted (one) of five (5) upright support posts on the North Pier of the Bridge,' and '[t]he increased water flow scoured and undermined the South Concrete Pier of the Bridge, causing it to rotate and tip sideways, partially into the River.'" *Id.* at 16-17 (quoting Docket No. 22 at 12, ¶¶ 39-40). Judge O'Hara noted that the exhibits attached to the amended complaint contain "pictures of the Bridge that show discernable damage." *Id.* at 17 (citing Docket No. 22-1 at 10-11). The magistrate judge thus found that the County's decision to remove the Bridge was "nearly the

perfect example of a government exercising its broad police power authority 'to provide for the public health, safety, and morals.'" *Id.* (quoting *Lech*, 791 F. App'x at 718).

Plaintiffs object to this portion of the recommendation on three grounds.  Docket No. 77 at 10-11.  First, plaintiffs argue that the recommendation is "impermissibly at odds with Chief Judge Brimmer's 8/20/24 Order in the related case of *Astrid v. Larimer County* (Case No. 23-cv-02051-PAB-JPO) denying the County's motion to dismiss the takings claim." *Id.* at 10.  Plaintiffs contend that their takings claim is "virtually identical" to the takings claim in *Astrid* and therefore the Court's analysis in the *Astrid* order should "apply equally" to plaintiffs' case. *Id.*  Second, plaintiffs argue that the magistrate judge did not "adequately analyze or consider in any meaningful way the heavy criticism of *Lech* brought by legal scholars and observed by other appellate authorities." *Id.*  Third, plaintiffs claim that the magistrate judge "overlook[ed] many plausible allegations regarding 'public use' set forth in plaintiffs' *Amended Complaint*." *Id.* at 11.  Plaintiffs insist that, because the Bridge was not an "imminent danger," the Board's "police power" argument fails. *Id.*

The Court finds that the magistrate judge correctly concluded that the amended complaint contains no allegations suggesting that the County demolished the Bridge pursuant to its eminent domain power, rather than its police power.  The amended complaint alleges that, on July 20, 2021, a rainstorm caused debris and excess water to flow down the River, which caused damage to the Bridge.  Docket No. 22 at 4, 11-12, ¶¶ 6, 32, 37-38.  Debris "displaced" one of five posts and "tilted" one of five upright support posts on the North Pier. *Id.* at 12, ¶ 39.  "The increased water flow scoured and undermined the South Concrete Pier of the Bridge, causing it to rotate and tip sideways,

partially into the River." *Id*., ¶ 40.  Although the Bridge remained standing, there was a "visible vertical dip" in the Bridge.  *Id*., ¶¶ 40-41; *see also* Docket No. 22-1 at 10.  Ms. Fay's assessment found that the "superstructure [was] currently stable but will become unstable if additional debris hits it."  Docket No. 22 at 12-13, ¶ 43.  The Notice of Imminent Danger concluded that additional flooding in the River could create "life-safety and property damage issues" downstream.  *Id*. at 14, ¶ 46.  Although plaintiffs allege that the demolition was improper because the Bridge "was highly repairable within a relatively short period of time" and the Bridge was not an "imminent danger," *id*. at 5, 16, ¶¶ 10, 53, the amended complaint contains no allegations suggesting that the County demolished the Bridge "for public use," rather than to advance "public health [or] safety." *See Lech*, 791 F. App'x at 718.[7]

The Court rejects plaintiffs' argument that the recommendation is "impermissibly at odds" with the Court's order in *Astrid*.  *See* Docket No. 77 at 10.  In *Astrid*, the Court found that the complaint plausibly alleged that the County demolished the Bridge pursuant to its eminent domain power, not its police power, because the complaint alleged that the "demolition furthered the County's goal of preserving the River's status as a Wild and Scenic River" under a federal program.  *Astrid v. Bd. of Cnty. Comm'rs of Larimer Cnty., Colo.*, No. 23-cv-02051-PAB-JPO, 2024 WL 3900210, at *8 (D. Colo. Aug. 20, 2024).  The *Astrid* complaint alleged that (i) the County had "an interest in maintaining the River's status as a Wild and Scenic River;" (ii) the federal "management

---

[7] The portion of plaintiffs' objection arguing that the magistrate judge "overlook[ed] many plausible allegations regarding 'public use' set forth in plaintiffs' *Amended Complaint*," *see* Docket No. 77 at 11, is not specific because plaintiffs fail to identify which allegations the magistrate judge purportedly failed to consider.  *See One Parcel*, 73 F.3d at 1059.  Accordingly, this portion of the objection is insufficient.

plan [for Wild and Scenic Rivers] encourages the modification or removal of low bridges and pylons on a voluntary basis;" (iii) federal officials "informed the County that the Bridge should have no in-stream supports;" and (iv) the County demolished the Bridge because the proposed in-stream pylons would "interfere with the natural, cultural, and recreational value of the River." *Id*. The Court in *Astrid* found that "these allegations plausibly allege[d] that defendant demolished the Bridge for 'public use' under its eminent domain power, rather than for 'public health, safety, and morals' under its police power." *Id*. (quoting *Lech*, 791 F. App'x at 718). In contrast, here, the amended complaint contains no allegations that the County demolished the Bridge to preserve the River's status as a Wild and Scenic River or to protect the natural, cultural, and recreational value of the River. Although *Astrid* and this case both involve the demolition of the same Bridge, the Court cannot rely on allegations in the *Astrid* complaint when resolving the motions to dismiss in this case. *See Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1286 n.1 (10th Cir. 2019) ("The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true . . . [a court should] not consider evidence or allegations outside the four corners of the complaint." (citations omitted)).

Furthermore, the Court rejects plaintiffs' argument that the magistrate judge did not "adequately analyze or consider in any meaningful way the heavy criticism of *Lech* brought by legal scholars and observed by other appellate authorities." *See* Docket No. 77 at 10. In response to the County defendants' motion to dismiss, plaintiffs argued that *Lech* was wrongly decided, citing various law review articles and a district court opinion from the Eastern District of Texas. Docket No. 63 at 9 (citing *Baker v. City of McKinney,*

*Texas*, 601 F. Supp. 3d 124, 135 (E.D. Tex. 2022), *rev'd and remanded*, 84 F.4th 378 (5th Cir. 2023)).  Secondary sources of authority, such as law review articles, are not binding authority.  *See Trujillo v. Amity Plaza, LLC*, No. 23-cv-01019-CMA-SKC, 2024 WL 358129, at *5 (D. Colo. Jan. 31, 2024).  Moreover, the vacated district court decision in *Baker* is not binding precedent on this Court.  *See Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case.") (citation omitted).

Accordingly, the Court overrules the fourth objection and accepts the magistrate judge's recommendation to dismiss plaintiffs' takings claim.  "[O]rdinarily the dismissal of a pro se claim under Rule 12(b)(6) should be without prejudice."  *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010).  However, "[c]omplaints drafted by pro se litigants . . . are not insulated from the rule that dismissal with prejudice is proper for failure to state a claim when 'it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend.'"  *Fleming v. Coulter*, 573 F. App'x 765, 769 (10th Cir. 2014) (unpublished) (quoting *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 806 (10th Cir. 1999)).  The Court finds that dismissal without prejudice is appropriate because it would not be futile to allow plaintiffs an opportunity to amend the takings claim.  Accordingly, the Court dismisses plaintiffs' takings claim without prejudice.[8]

---

[8] To the extent that plaintiffs seek to file an amended pleading, plaintiffs must file a motion to that effect pursuant to Fed. R. Civ. P. 15(a)(2).

E.  **Objection Five**

Plaintiffs object to the magistrate judge's recommendation to dismiss the procedural due process claim.  Docket No. 77 at 12.  Plaintiffs' second cause of action asserts that the Board violated plaintiffs' procedural due process rights under the Fourteenth Amendment of the U.S. Constitution and Article II, Section 25 of the Colorado Constitution.  Docket No. 22 at 29-30, ¶¶ 95-99.  The Fourteenth Amendment prohibits a state from depriving a person of "property without due process of law."  *Hyde Park Co. v. Santa Fe City Council*, 226 F.3d 1207, 1210 (10th Cir. 2000) (quoting U.S. Const. Amend. XIV).  "Procedural due process ensures the state will not deprive a party of property without engaging fair procedures to reach a decision, while substantive due process ensures the state will not deprive a party of property for an arbitrary reason regardless of the procedures used to reach that decision."  *Id*.  Likewise, the Colorado Constitution provides that "[n]o person shall be deprived of life, liberty or property, without due process of law."  Colo. Const. Art. II, § 25.[9]

In analyzing a procedural due process claim, "courts must engage in a two-step inquiry: (1) did the individual possess a protected interest such that the due process protections were applicable; and, if so, then (2) was the individual afforded an appropriate level of process."  *Montoya*, 662 F.3d at 1167 (citation omitted); *see also*

---

[9] Courts often analyze due process claims under the U.S. Constitution and the Colorado Constitution together.  *See, e.g., Citizen Ctr. v. Gessler*, 770 F.3d 900, 916-17 (10th Cir. 2014) (analyzing federal and Colorado procedural due process claims together); *People v. Zinn*, 843 P.2d 1351, 1353 n.3 (Colo. 1993) ("In view of the circumstances of this case, the due process guarantees of the Fifth and Fourteenth Amendments to the United States Constitution and of article II, section 25, of the Colorado Constitution may be deemed co-extensive.").  The magistrate judge appears to have analyzed plaintiffs' procedural due process claims together.  *See* Docket No. 70 at 18-20.  Plaintiffs do not object to that aspect of the recommendation.

*Reed v. Goertz*, 598 U.S. 230, 236 (2023).  "The essence of procedural due process is the provision to the affected party of some kind of notice and some kind of hearing." *Moore v. Bd. of Cnty. Comm'rs of Cnty. of Leavenworth*, 507 F.3d 1257, 1259 (10th Cir. 2007) (internal alterations, quotations, and citation omitted).

The following factors (the "*Mathews* factors") are relevant to whether an individual was afforded an appropriate level of process: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Hattrup v. United States*, 845 F. App'x 733, 737 (10th Cir. 2021) (unpublished) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).  Ultimately, "due process is flexible and calls for such procedural protections as the particular situation demands."  *Id.* (quoting *Mathews*, 424 U.S. at 334).

Judge O'Hara recommends dismissing plaintiffs' procedural due process claim for failure to allege the second element.  Docket No. 70 at 18-20.[10]  He found that plaintiffs had notice of the County's plan to demolish the Bridge through the Notice of Imminent Danger, Notice of Demolition, and Order for Demolition issued on July 28, 2021.  *Id.* at 19.  Judge O'Hara found that plaintiffs had a sufficient "opportunity to be

---

[10] The magistrate judge noted that the Board did not challenge whether plaintiffs had a protected property interest in the Bridge such that the due process protections were applicable.  Docket No. 70 at 18.

heard prior to the Bridge's removal" because plaintiffs proposed alternative plans to the County, including temporarily repairing the Bridge for foot-traffic only. *Id*. at 20.

Plaintiffs appear to argue that they have adequately established a procedural due process claim because they did not receive a pre-demolition hearing. Docket No. 77 at 12. Plaintiffs contend that the recommendation is "at odds" with the Court's decision in *Astrid* and argue that a post-deprivation remedy does not satisfy due process where the Bridge was removed pursuant to an established state procedure. *Id*.[11]

In their motion to dismiss, the County defendants argued that plaintiffs were provided "*some* kind of notice and . . . *some* kind of hearing" prior to the Bridge's removal because plaintiffs "had the opportunity to present alternatives to removal to Larimer County's engineers." Docket No. 47 at 11. The County defendants argued that a "state's violation of its own laws does not create a claim under § 1983." *Id*. (quoting *Rector v. City & Cnty. of Denver*, 348 F.3d 935, 947 (10th Cir. 2003)). Furthermore, they asserted that plaintiffs' procedural due process claim is "precluded by the existence of an adequate post-deprivation remedy," *id*. at 12 (citing *Hudson v. Palmer*, 468 U.S. 517, 533 (1984)), given that Colo. Rev. Stat. § 38-1-101 provides post-deprivation proceedings for inverse condemnation. *Id*. The County defendants contended that plaintiffs failed to plead any facts suggesting that the post-deprivation proceedings were "inadequate or that such procedures were unavailable to them." *Id*. (citing *Harris v.*

---

[11] In response to plaintiffs' objection, the County defendants argue that all of plaintiffs' objections are "cursory." Docket No. 80 at 6. The County defendants do not specifically address the procedural due process claim; rather, they assert that the magistrate judge "thoroughly considers and analyzes the factual and legal issues presented in the Defendants' [motions]." *Id*. at 5.

*Chabries*, 114 F. App'x 363, 365 (10th Cir. 2004) (unpublished); *Freeman v. Dep't of Corrs.*, 949 F.2d 360, 362 (10th Cir. 1991)).[12]

The Court finds that the amended complaint plausibly alleges the second element of the procedural due process claim.  The amended complaint alleges that, on July 20, 2021, a rainstorm caused debris and excess water to flow down the River, which caused damage to the Bridge.  Docket No. 22 at 4, 11-12, ¶¶ 6, 32, 37-38.  On July 28, 2021, Ms. White issued a Notice of Imminent Danger, pursuant to Section 109 of the County's Property Maintenance Code.  *Id.* at 13, ¶ 45; *see also* Docket No. 22-1 at 21-27.  The notice stated that any affected person "shall have the right to appeal to the Larimer County Board of Appeals" within 15 days.  Docket No. 22 at 14, ¶ 47. Plaintiffs proposed several alternatives to demolishing the Bridge, including temporarily repairing the Bridge for foot-traffic only.  *Id.* at 18, ¶ 59.  However, the County "refused to consider" those plans and demolished the Bridge on August 4, 2021.  *Id.*, ¶ 58. Plaintiffs "intended" to file an appeal with the Larimer County Board of Appeals, but the County demolished the Bridge before plaintiffs could file the appeal.  *Id.* at 23, ¶ 77. The Court finds that these allegations are sufficient at the motion to dismiss stage to allege that plaintiffs were not afforded an appropriate level of process.  *See Montoya*, 662 F.3d at 1169 (holding that the complaint sufficiently alleged the second element of a procedural due process claim because the officer gave plaintiff "no process before placing him in the sex offender probation unit"); *Mathews*, 424 U.S. at 333 ("This Court consistently has held that some form of hearing is required before an individual is finally

---

[12] In its argument, the County defendants did not address any of the *Mathews* factors.

deprived of a property interest."); *Miller v. City of Mission, Kan*., 705 F.2d 368, 372 (10th Cir. 1983) ("An impartial tribunal is an essential element of a due process hearing.").

The Court rejects the County defendants' argument that the procedural due process claim is "precluded by the existence of an adequate post-deprivation remedy." *See* Docket No. 47 at 12.  The Supreme Court and the Tenth Circuit have held that "a post-deprivation remedy does not satisfy due process 'where the property deprivation is effected pursuant to an *established state procedure*.'"  *Johnson v. Whitney*, 723 F. App'x 587, 593 (10th Cir. 2018) (unpublished) (quoting *Hudson*, 468 U.S. at 534) (emphasis added); *see also Tennyson v. Carpenter*, 558 F. App'x 813, 822 (10th Cir. 2014) (unpublished).  In contrast, "'[w]here a loss of property is occasioned by *a random, unauthorized act* by a state employee, rather than by an established state procedure, the state cannot predict when the loss will occur,' thus rendering a pre[-]deprivation hearing 'not only impracticable, but impossible.'"  *Requena v. Roberts*, 893 F.3d 1195, 1212 (10th Cir. 2018) (quoting *Hudson*, 468 U.S. at 532) (emphasis added). Under "such circumstances, due process is satisfied so long as 'a meaningful post[-]deprivation remedy for the loss is available.'"  *Id*. (quoting *Hudson*, 468 U.S. at 533). Here, Ms. White issued the Notice of Imminent Danger pursuant to Section 109 of the County's Property Maintenance Code.  Docket No. 22-1 at 22.  The demolition proceedings were therefore instituted pursuant to an established state procedure, rather than a "random, unauthorized act by a state employee."  *See Requena*, 893 F.3d at 1212; *see also Oakley v. Zavares*, No. 09-cv-01991-WYD-KMT, 2010 WL 4256190, at *7 (D. Colo. Aug. 16, 2010), *recommendation adopted*, 2011 WL 198405 (D. Colo. Jan. 20, 2011) (finding defendants' assertion that post-deprivation remedies were "available"

under *Hudson* was "inapposite" because the "restitution orders resulted from established state procedure").  Thus, at the pleading stage, plaintiffs have adequately established that a post-deprivation remedy does not satisfy due process.  *See Johnson*, 723 F. App'x at 593; *see also Haddon v. City of Cleveland*, 481 F. Supp. 3d 642, 651 (N.D. Ohio 2020) (holding that plaintiffs established a due process claim "where the decision to demolish without a pre-demolition hearing was pursuant to established state procedures and not due to the unauthorized or random act of an official").[13]  As a result, the Court sustains plaintiffs' fifth objection and rejects the portion of the magistrate judge's recommendation on the procedural due process claim.

### F.  Objection Six

Plaintiffs object to the magistrate judge's recommendation to dismiss their substantive due process claim.  Docket No. 77 at 12-13.  Plaintiffs' second cause of action asserts that the Board violated plaintiffs' substantive due process rights under the Fourteenth Amendment of the U.S. Constitution and Article II, Section 25 of the Colorado Constitution.  Docket No. 22 at 29-30, ¶¶ 95-99.[14]  Substantive due process is

---

[13] In a footnote in the motion to dismiss, the County defendants appear to argue that the County could demolish the Bridge without providing a hearing because it was facing an emergency situation.  *See* Docket No. 47 at 10 n.6 ("Although not clearly pled, there is some indication in the [amended complaint] that Larimer County was faced with an emergency situation in confronting the risk that the bridge might ultimately collapse unexpectedly.").  The Court declines to consider this cursory argument raised in a footnote.  *See United States v. Wooten*, 377 F.3d 1134, 1145 (10th Cir. 2004) ("The court will not consider . . . issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation." (citation and internal quotations omitted)); *United States v. Hardman*, 297 F.3d 1116, 1131 (10th Cir. 2002) ("Arguments raised in a perfunctory manner, such as in a footnote, are waived.").

[14] The magistrate judge appears to have analyzed plaintiffs' substantive due process claims under federal law and Colorado law together.  *See* Docket No. 70 at 20-21; *see also Zinn*, 843 P.2d at 1353 n.3 ("In view of the circumstances of this case, the due process guarantees of the Fifth and Fourteenth Amendments to the United States

based on the Fourteenth Amendment's protection against "arbitrary government power." *Lindsey v. Hyler*, 918 F.3d 1109, 1115 (10th Cir. 2019). The Supreme Court recognizes two types of substantive due process claims: (1) claims that the government has infringed a "fundamental" right; and (2) claims that government action deprived a person of life, liberty, or property in a manner so arbitrary that it "shocks the judicial conscience." *Doe v. Woodard*, 912 F.3d 1278, 1300 (10th Cir. 2019). Courts "apply the fundamental-rights approach when the plaintiff challenges *legislative action*, and the shocks-the-conscience approach when the plaintiff seeks relief for tortious *executive action*." *Id*. (quoting *Halley v. Huckaby*, 902 F.3d 1136, 1153 (10th Cir. 2018)). Here, plaintiffs challenge executive action, *see* Docket No. 22 at 29-30, ¶¶ 95-99,[15] and therefore the "shocks the conscience" standard applies. *See Woodard*, 912 F.3d at 1300.

"Executive action that shocks the conscience requires much more than negligence." *Id*. "Even the actions of a reckless official or one bent on injuring a person

---

Constitution and of article II, section 25, of the Colorado Constitution may be deemed co-extensive."). Plaintiffs do not object to that portion of the recommendation.

[15] Plaintiffs named the "Board of County Commissioners of Larimer County" as a defendant in this case pursuant to Colo. Rev. Stat. § 30-11-105. Docket No. 22 at 11, ¶ 30. "Under Colorado law, any suit against a county must be brought in the name of the 'board of county commissioners of the county.'" *Est. of Blodgett v. Correct Care Sols., LLC*, No. 17-cv-2690-WJM-NRN, 2018 WL 6528109, at *8 (D. Colo. Dec. 12, 2018) (quoting Colo. Rev. Stat. § 30-11-105). "An action attempted to be brought under any other designation is a nullity, and no valid judgment can enter in such a case." *Id*. (quoting *Calahan v. Jefferson Cnty.*, 429 P.2d 301, 302 (Colo. 1967)). County commissioners often exercise "executive, legislative and quasi-judicial responsibilities." *Beacom In & For Seventeenth Jud. Dist., Adams Cnty. v. Bd. of Cnty. Comm'rs of Adams Cnty.*, 657 P.2d 440, 445 (Colo. 1983). Here, plaintiffs challenge the demolition of the Bridge, *see* Docket No. 22 at 29-30, ¶¶ 95-99, which is an executive action, not a legislative function. *See Bruce v. Ogden City Corp.*, 2023 WL 8300363, at *15 (10th Cir. Dec. 1, 2023) (noting that a city's "demolition order" is "executive action").

do not necessarily shock the conscience." *Id*.; *see also Onyx Props., LLC v. Bd. of Cnty. Commr's*, 838 F.3d 1039, 1049 (10th Cir. 2016) ("Intentionally or recklessly causing injury through the abuse or misuse of governmental power is not enough."). "Conduct that shocks the judicial conscience is deliberate government action that is arbitrary and unrestrained by the established principles of private right and distributive justice." *Woodard*, 912 F.3d at 1300 (quoting *Hernandez v. Ridley*, 734 F.3d 1254, 1261 (10th Cir. 2013)) (internal quotations omitted). "To show a defendant's conduct is conscience shocking, a plaintiff must prove a government actor arbitrarily abused his authority or employed it as an instrument of oppression." *Id*. (citation omitted). "The behavior complained of must be egregious and outrageous." *Id*. (citation omitted); *see also Lindsey*, 918 F.3d at 1116 (noting that "[o]nly the most egregious official conduct can be said to be arbitrary in the constitutional sense." (quoting *Onyx Props., LLC,* 838 F.3d at 1048-49); *Bruce*, 2023 WL 8300363, at *15 ("To be conscience shocking, a defendant's behavior must lack 'any reasonable justification in the service of a legitimate governmental objective.'" (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)).

In deciding whether conduct shocks the conscience, courts "must bear in mind three basic principles highlighted by the Supreme Court in evaluating substantive due process claims: (1) the need for restraint in defining their scope, (2) the concern that § 1983 not replace state tort law, and (3) the need for deference to local policymaking bodies in making decisions impacting upon public safety." *Isaacs v. Konawa Pub. Sch.*, 2022 WL 1100402, at *3 (10th Cir. Apr. 13, 2022) (quoting *Uhlrig v. Harder*, 64 F.3d 567, 573 (10th Cir. 1995)); *see also Onyx Properties LLC*, 838 F.3d at 1049 (noting that

the restricted scope of substantive due process claims is "readily apparent in cases involving land use").

Judge O'Hara recommends dismissing the substantive due process claim because plaintiffs "do not plausibly allege that Larimer County officials acted egregiously or outrageously in deciding to demolish the Bridge, or that the decision lacked any reasonable justification in the service of a legitimate governmental objective."  Docket No. 70 at 21.  The magistrate judge concluded that plaintiffs' "allegation that Larimer County 'rushed to an unreasonable and unsupported finding of 'imminent danger' without performing critical and necessary tasks to arrive at such a conclusion' describes, at the very most, negligent conduct, which is legally insufficient to state a claim for substantive due process."  *Id*.

Plaintiffs argue that the recommendation does "not sufficiently acknowledge the blurred lines between violations of due process that shock the conscience, and those that do not."  Docket No. 77 at 12.  Plaintiffs assert that the amended complaint adequately alleges that the County's conduct was "sufficiently egregious," including the fact that the County "rush[ed] to demolish the Bridge before their own [appeal] deadline expired."  *Id*. at 12-13.[16]

---

[16] Moreover, plaintiffs argue that the recommendation "does not adequately address many of the appellate cases incorporated from Astrid's opposition."  Docket No. 77 at 12.  In response to the County defendants' motion to dismiss, plaintiffs stated that they "incorporate herein the arguments in opposition to the dismissal of Astrid's procedural and substantive due process claims as set forth in Astrid's Response [ECF 36] at pages 10-15."  Docket No. 63 at 11.  This portion of plaintiffs' objection is not specific because it does not identify the case law that the magistrate judge purportedly failed to consider.  *See One Parcel*, 73 F.3d at 1059.  Moreover, plaintiffs provide no legal authority suggesting that litigants can incorporate by reference arguments raised in another litigant's briefing in a different case.

The Court agrees with the magistrate judge's conclusion that plaintiffs have failed to plausibly allege that the County's behavior "shocks the judicial conscience."  *See Woodard*, 912 F.3d at 1300.  Although the amended complaint alleges that the demolition was improper because the Bridge "was highly repairable within a relatively short period of time" and the Bridge did not represent an "imminent danger," *see* Docket No. 22 at 5, 16, ¶¶ 10, 53, the complaint contains no allegations suggesting that the County acted egregiously or outrageously in ordering the demolition.  The shocks-the-conscience standard is "exacting."  *Lindsey*, 918 F.3d at 1116.  For example, the Supreme Court has found that a "sheriff's application of stomach pumping to force vomiting" shocked the conscience, *see Woodard*, 912 F.3d at 1300 (citing *Rochin v. California*, 342 U.S. 165, 172 (1952)), and the Tenth Circuit found that a "social worker's various actions that led to physical and sexual abuse of a minor shocked the conscience."  *Id*. (citing *T.D. v. Patton*, 868 F.3d 1209, 1213 (10th Cir. 2017)).  By contrast, the Tenth Circuit recently dismissed a substantive due process claim arising out of a city's demolition order for a building damaged by a fire because plaintiff failed to establish that the city's actions "could be deemed to shock the conscience."  *Bruce*, 2023 WL 8300363, at *14-16.  The Tenth Circuit explained that municipalities have an important interest in demolishing structures that are "deemed a nuisance or threat to public health or safety."  *Id*. at *15.  The Tenth Circuit noted that, to its knowledge, "no court has held that it shocks the conscience for municipal authorities, acting pursuant to an unchallenged ordinance, to order the destruction of a building found by responsible officers to be a nuisance or threat to public health or safety."  *Id*. (citing *Harris v. City of Akron*, 20 F.3d 1396, 1405 (6th Cir. 1994)).  Plaintiffs have cited no authority suggesting

that a governmental entity's action of issuing a demolition order when a structure could have been repaired constitutes action so "egregious" or "outrageous" that it shocks the judicial conscience.  *See id*.

Accordingly, the Court overrules plaintiffs' sixth objection and dismisses the substantive due process claim with prejudice because it would be futile to give plaintiffs the opportunity to amend this claim.  *See Fleming*, 573 F. App'x at 769; *see also Bruce*, 2023 WL 8300363, at *15.

### G.  Objection Seven

Plaintiffs object to the magistrate judge's recommendation to dismiss the third claim.  Docket No. 77 at 13.  Plaintiffs' third cause of action asserts a "Willful and Wanton Conduct" claim against Ms. Hodges and Ms. Fay.  Docket No. 22 at 30-31, ¶¶ 100-105.  Judge O'Hara recommends dismissing this claim "because Colorado law does not recognize an independent cause of action for willful and wanton conduct." Docket No. 70 at 22 (citing *Ramsay v. Frontier, Inc.*, No. 19-cv-03544-CMA-NRN, 2020 WL 4557545, at *8-9 (D. Colo. July 30, 2020), *recommendation adopted*, 2021 WL 651021 (D. Colo. Feb. 19, 2021); *Carani v. Meisner*, No. 08-cv-02626-MSK-CBS, 2009 WL 2762719, at *1 (D. Colo. Aug. 26, 2009), *aff'd*, 521 F. App'x 640 (10th Cir. 2013)).

Plaintiffs argue that, "[q]uite simply, for any common law cause of action to come into existence, there must be a court who becomes the first willing to recognize such a claim."  Docket No. 77 at 13.  Plaintiffs assert that the Court should recognize a cause of action based on the facts in this case and "fashion a remedy for Plaintiffs based on the legal maxim that equity will not suffer a wrong to be without a remedy."  *Id*. (citing

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 415-16 (1971)).

The Court overrules plaintiffs' seventh objection.  Plaintiffs do not object to the magistrate judge's conclusion that Colorado law does not recognize an independent cause of action for willful and wanton conduct.  The Court will not fashion a new remedy under Colorado law.  *See Vaske v. DuCharme, McMillen & Assocs., Inc.*, 757 F. Supp. 1158, 1163 (D. Colo. 1990) ("It is simply not the role of a federal court to effect a dramatic shift in [the] forum state's common law." (citing *Power Motive Corp. v. Mannesmann Demag Corp.*, 617 F. Supp. 1048, 1051 (D. Colo. 1985)).  Accordingly, the Court dismisses plaintiffs' third claim with prejudice because it would be futile to give plaintiffs the opportunity to amend this claim.  *See Fleming*, 573 F. App'x at 769.

### H.  Objection Eight

Plaintiffs object to the magistrate judge's recommendation to dismiss the fifth and sixth claims.  Docket No. 77 at 13-14.  Plaintiffs' fifth cause of action asserts a "Declaratory Judgment/Specific Performance" claim against the Board, requesting "a Court order requiring [the Board] to specifically perform any and all tasks necessary to replace the Bridge with a substantially similar means of access."  Docket No. 22 at 33, ¶¶ 112-116.  Plaintiffs' sixth cause of action asserts a "Discretionary Remedies" claim, requesting that the Court "fashion remedies in favor of Plaintiffs" if the other causes of action fail based "on the legal maxim that equity will not suffer a wrong to be without a remedy."  *Id.* at 33-34, ¶¶ 117-119 (citing *Bivens*, 403 U.S. at 388).

Judge O'Hara recommends dismissing the injunctive relief claim because "Plaintiffs cannot maintain a claim against Larimer County for the demolition of the

Bridge."  Docket No. 70 at 22.  Judge O'Hara recommends dismissing the discretionary remedies claim because plaintiffs have not plausibly alleged that they suffered a compensable "wrong."  *Id*.  Plaintiffs argue that, because they have plausibly alleged the takings claim, they are entitled to assert a claim for declaratory relief and specific performance.  Docket No. 77 at 13.  Furthermore, plaintiffs appear to argue that the Court should recognize a new cause of action for a "discretionary remedies" claim.  *See id*. at 14.

The Court agrees with the magistrate judge's recommendation to dismiss the fifth claim.  As discussed previously, plaintiffs have not plausibly alleged a takings claim for the demolition of the Bridge.  Even if plaintiffs had adequately alleged this claim, equitable relief is not a proper remedy for a takings claim.  *See Knick v. Twp. of Scott, Penn.*, 588 U.S. 180, 201 (2019).  In *Knick*, the Supreme Court explained that, "because the federal and nearly all state governments provide just compensation remedies to property owners who have suffered a taking, equitable relief is generally unavailable. As long as an adequate provision for obtaining just compensation exists, there is no basis to enjoin the government's action effecting a taking."  *Id*.  Both federal and Colorado law provide just compensation remedies for property owners who have suffered a taking.  *See Lech*, 791 F. App'x at 714.  Plaintiffs' fifth claim requests an equitable remedy.  *See* Docket No. 22 at 33, ¶ 116 (requesting "a Court order requiring [the Board] to specifically perform any and all tasks necessary to replace the Bridge with a substantially similar means of access"); *see also Croy v. Cobe Laboratories, Inc.*, 132 F. App'x 229, 231 (10th Cir. 2005) (unpublished) ("Specific performance is an equitable remedy.").  The Court finds that, because plaintiffs have "just compensation remedies"

under federal and state law, plaintiffs' requested equitable relief is "unavailable."  *See Knick*, 588 U.S. at 201; *see also Exotic Smoke & Vape v. Cox*, 2022 WL 2316323, at *1-2 (D. Utah June 28, 2022) (declining to issue "equitable relief" when plaintiffs could "obtain just compensation through this Section 1983 action . . . for a regulatory taking"). Accordingly, the Court overrules this portion of plaintiffs' objection and dismisses the fifth claim with prejudice because it would be futile to give plaintiffs the opportunity to amend this claim.  *See Fleming*, 573 F. App'x at 769.

Moreover, the Court agrees with the magistrate judge's recommendation to dismiss the sixth claim requesting new discretionary remedies.  As the Court noted previously, the Court will not fashion a new remedy under Colorado law.  *See Vaske*, 757 F. Supp. at 1163.  Accordingly, the Court overrules this portion of plaintiffs' objection and dismisses the sixth claim with prejudice because it would be futile to give plaintiffs the opportunity to amend this claim.  *See Fleming*, 573 F. App'x at 769.

## I.   Objection Nine

Plaintiffs object to the magistrate judge's recommendation to dismiss their fourth claim.  Docket No. 77 at 5-6.  Plaintiffs' fourth cause of action asserts a negligence claim against Mr. Kaye and SEH.  Docket No. 22 at 31-32, ¶¶ 106-111.  Specifically, plaintiffs allege that Mr. Kaye and SEH "breached their duty" by

> permitting Larimer County employees and/or officials to improperly and unprofessionally influence their opinions and conclusions regarding the condition of the Bridge, its repair capabilities, and influencing their decisions regarding the information to include in their various reports relating to the Bridge, and including Defendants improperly, negligently, and unprofessionally altering portions of one or more of their reports relating to the Bridge.  Underscoring the negligent conduct of Defendants described more fully herein, Defendants knew the County's opinion of the Bridge being an "imminent threat" was largely based on the false allegation that the Bridge was resting on Rainstorm debris.  Defendants

knew from their own observations, as corroborated by their own photographs, that the County's allegation was false.

*Id*. at 32, ¶ 108.

Judge O'Hara recommends dismissing plaintiffs' negligence claim as barred under the statute of limitations pursuant to Colo. Rev. Stat. § 13-80-104.  Docket No. 70 at 8-11.  That statute provides that

> all actions against any architect, contractor, builder or builder vendor, engineer, or inspector performing or furnishing the design, planning, supervision, inspection, construction, or observation of construction of any improvement to real property shall be brought within the time provided in section 13-80-102 after the claim for relief arises, and not thereafter, but in no case shall such an action be brought more than six years after the substantial completion of the improvement to the real property[.]

Colo. Rev. Stat. § 13-80-104(1)(a).  Section 13-80-102 provides that tort actions, including "actions for negligence," "must be commenced within two years after the cause of action accrues."  Colo. Rev. Stat. § 13-80-102(1)(a).  Under § 13-80-104, an action against an engineer arises "at the time the claimant . . . discovers or in the exercise of reasonable diligence should have discovered the physical manifestations of a defect in the improvement which ultimately causes the injury."  Colo. Rev. Stat. § 13-80-104(1)(b)(I).

Judge O'Hara concluded that the statute of limitations provision in § 13-80-104 applies to plaintiffs' negligence claim.  Docket No. 70 at 10.  He found that the amended complaint plausibly alleges that the Bridge "suffered damages" and that the County retained SEH to assess the overall condition of the Bridge "in terms of load carrying capacity, potential repair options, and potential for replacements."  *Id*. (quoting Docket No. 22 at 13, ¶ 44).  Therefore, the magistrate judge found that "Plaintiffs' claim is properly construed as an action against an engineer for negligently planning, designing,

or inspecting an improvement to real property—the Bridge—and it squarely falls within § 13-80-104." *Id*.[17]

Judge O'Hara found that plaintiffs' negligence claim accrued the day that the Bridge was demolished because accrual under § 13-80-104(1)(b)(I) "depends on the discovery of the *manifestation* of the defect and not its cause." *Id*. at 11 (quoting *Broomfield Senior Living Owner, LLC v. R.G. Brinkmann Co*., 413 P.3d 219, 226 (Colo. App. 2017), and citing *United Fire Grp. ex rel. Metamorphosis Salon v. Powers Elec., Inc*., 240 P.3d 569, 573 (Colo. App. 2010)). The magistrate judge concluded that the "alleged defect in the SEH Defendants' inspection of the Bridge manifested itself [when] the Bridge was removed. Plaintiffs had two years after the demolition of the Bridge to bring a negligence claim against those involved in deciding to repair or destroy it. They failed to do so, and their claim is now time-barred." *Id*.

---

[17] Judge O'Hara rejected plaintiffs' argument that the demolition of the Bridge was not "an improvement [to] real property, but rather the destruction of it" because plaintiffs' argument misunderstood the "broad scope" of § 13-80-104, which is meant to "provide comprehensive coverage to builders, contractors, and other construction industry professionals." Docket No. 70 at 10 (quoting *Maryland Cas. Co. v. Formwork Servs., Inc*., 812 F. Supp. 1127, 1131 (D. Colo. 1993) (quoting *Homestake Enters., Inc. v. Oliver*, 817 P.2d 979, 982 (Colo. 1991))). Judge O'Hara explained that

> the legislature intended "'defect' to include a wide range of acts or events," including "'any and all actions in tort . . . for any deficiency in the design, planning, supervision, inspection, construction, or observation of construction of any improvement to real property.'" *Homestake*, 817 P.2d at 983 (quoting Colo. Rev. Stat. § 13-80-127(1)(c)(I)). This broad construction "is consistent with the legislature's intent to enact a statute of limitations to protect contractors and other professionals in the construction business from stale claims." *Id.* Plaintiffs['] claim plainly involves an allegedly deficient inspection of an improvement to real property, and therefore § 13-80-104 applies.

Docket No. 70 at 10. Plaintiffs do not object to this portion of the recommendation.

Plaintiffs object to this portion of the recommendation on three grounds.  Docket No. 77 at 5-6.  First, plaintiffs argue that "issues relating to the timing of accrual" are "uniquely within the fact-finding purview of the jury, and not by the Court on a Rule 12(b)(6) motion."  *Id*. at 6.  Next, plaintiffs contend that the magistrate judge relied upon the wrong accrual provision.  *Id*. at 5.  Plaintiffs insist that Colo. Rev. Stat. § 13-80-108(1) is the correct accrual provision, *id*., and that provision provides that "a cause of action for injury to person, property, reputation, possession, relationship, or status shall be considered to *accrue on the date both the injury and its cause are known* or should have been known by the exercise of reasonable diligence."  Colo. Rev. Stat. § 13-80-108(1) (emphasis added).  Plaintiffs state that Judge O'Hara's conclusion that the negligence claim accrued on the date the Bridge was demolished "ignores the fact that Plaintiffs could not have possibly known several key facts on that date," including (i) "the existence of evidence supporting the wrongful conduct of the parties," and (ii) "the identity of many of the parties," including SEH and Mr. Kaye.  Docket No. 77 at 5.  Finally, plaintiffs argue that the recommendation "fails to consider and apply various appellate decisions supporting Plaintiffs' position."  *Id*. at 6 (citing *In re Marriage of Smith*, 7 P.3d 1012, 1015 (Colo. App. 1999); *Gavend v. Malman*, 946 P.2d 558 (Colo. App. 1997); *Winkler v. Rocky Mountain Conf. of the United Methodist Church*, 923 P.2d 152 (Colo. App. 1995)).

The Court agrees with the magistrate judge's determination that plaintiffs' negligence claim is barred under the statute of limitations.  "[A]lthough a statute of limitations bar is an affirmative defense, it may be resolved on a Rule 12(b)(6) motion to dismiss 'when the dates given in the complaint make clear that the right sued upon has

been extinguished.'" *Radloff-Francis v. Wyoming Med. Ctr., Inc.*, 524 F. App'x 411, 413 (10th Cir. 2013) (unpublished) (quoting *Aldrich v. McCulloch Props., Inc.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980)).  The Court therefore rejects the portion of plaintiffs' objection insisting that the statute of limitations issue is "uniquely within the fact-finding purview of the jury."  *See* Docket No. 77 at 6.

Plaintiffs do not object to the portion of the recommendation concluding that the negligence claim is "properly construed as an action against an engineer for negligently planning, designing, or inspecting an improvement to real property—the Bridge—and [thus] squarely falls within § 13-80-104."  *See* Docket No. 70 at 10.  The Court agrees with the magistrate judge's determination that § 13-80-104(1)(a) applies to plaintiffs' claim.  The amended complaint alleges that, on July 21, 2021, the Board retained SEH to "assess the damage to the Bridge and two neighboring bridges."  Docket No. 22 at 12, ¶ 42.  Mr. Kaye and another SEH engineer visited the Bridge on July 23, 2021 to assess "load carrying capacity, potential repair options, and potential for replacements."  *Id*. at 13, ¶ 44.  Because plaintiffs' negligence claim involves an action against an "engineer" for the "planning," "design," and "inspection" of an improvement to real property, section 13-80-104(1)(a) applies to plaintiffs' claim.  *See* Colo. Rev. Stat. § 13-80-104(1)(a).  As a result, plaintiffs' negligence claim "must be commenced within two years after the cause of action accrues."  *See* Colo. Rev. Stat. § 13-80-102(1)(a).

The Court finds that the magistrate judge correctly concluded that plaintiffs' negligence claim accrued on August 4, 2021, the day the Bridge was demolished.  *See* Docket No. 70 at 11.  Colorado law provides that an action against an engineer arises "at the time the claimant . . . discovers or in the exercise of reasonable diligence should

have discovered the *physical manifestations of a defect* in the improvement which ultimately causes the injury." Colo. Rev. Stat. § 13-80-104(1)(b)(I) (emphasis added). Accrual under that provision "depends on the discovery of the *manifestation* of the defect and not its cause." *Broomfield Senior Living Owner*, 413 P.3d at 226. The Court agrees that the demolition of the Bridge was the "physical manifestation[] of a defect," *see* Colo. Rev. Stat. § 13-80-104(1)(b)(I), because the demolition was the "visible expression" of Mr. Kaye and SEH's alleged negligence. *See United Fire Grp.*, 240 P.3d at 571 (finding that the fire was the "physical manifestation[ ] of a defect" under § 13-80-104(1)(b)(I) because the fire was the "was the perceptible, outward, and visible expression of . . . the defective wiring in the exit sign"). Under section 13-80-104(1)(b)(I), it is irrelevant whether plaintiffs knew that the SEH defendants' alleged negligence caused the demolition of the Bridge. *See id*. at 572 (concluding that "it was not necessary to know that the defect caused the fire for the fire to be the defect's physical manifestation" under section 13-80-104(1)(b)(I)).

Here, the Bridge was demolished on August 4, 2021. Docket No. 22 at 18, ¶ 58. Thus, plaintiffs' negligence claim accrued on August 4, 2021. *See* Colo. Rev. Stat. § 13-80-104(1)(b)(I). The two-year statute of limitations therefore expired on August 4, 2023. *See* Colo. Rev. Stat. § 13-80-102(1)(a). Plaintiffs asserted the negligence claim for the first time in their amended complaint on September 12, 2023. *See* Docket No. 22. As a result, the Court finds that plaintiffs' negligence claim is barred under the statute of limitations.

The Court rejects plaintiffs' argument that Colo. Rev. Stat. § 13-80-108(1) is the correct accrual provision. *See* Docket No. 77 at 5. All actions against an engineer

related to the "design" and "inspection" of "construction of any improvement to real property" are governed by the statute of limitations and accrual provisions in section 13-80-104.  *See* Colo. Rev. Stat. § 13-80-104(1)(a)-(b)(I); *see also Broomfield Senior Living Owner*, 413 P.3d at 226 (noting that the accrual provisions in § 13-80-104(1)(b)(I) apply to all claims for "construction defects"); *United Fire Grp*., 240 P.3d at 572 ("Had the legislature intended to require that the statute of limitations [for a claim under § 13-80-104] start to run after the injured party has discovered the precise defect that caused the injury, it could have easily done so by using language similar to that found in section 13-80-108(1)").[18]

As a result, the Court overrules plaintiffs' ninth objection and dismisses the negligence claim with prejudice.  *See Sanchez v. City of Littleton*, 491 F. Supp. 3d 904, 913 (D. Colo. 2020) ("If a claim is untimely under the statute of limitations it [will] be dismissed with prejudice." (citations omitted)).[19]

---

[18] Furthermore, the Court rejects plaintiffs' argument that the recommendation "fails to consider and apply various appellate decisions supporting Plaintiffs' position." *See* Docket No. 77 at 6.  Plaintiffs' cited cases are irrelevant because they do not involve claims that fall under Colo. Rev. Stat. § 13-80-104.  *See In re Marriage of Smith*, 7 P.3d at 1014 (action for "retroactive payment of child support" under the Uniform Parentage Act); *Gavend*, 946 P.2d at 563 ("legal malpractice action" against an attorney); *Winkler*, 923 P.2d at 158 (action against a church for "negligent hiring and supervision" of a pastor who allegedly behaved inappropriately towards women).

[19] The magistrate judge additionally concluded that the negligence claim should be dismissed due to plaintiffs' failure to file a certificate of review under Colo. Rev. Stat. § 13-20-602(1)(a).  Docket No. 70 at 11-15.  Plaintiffs object to this portion of the recommendation.  Docket No. 77 at 6-9.  Because the Court found that the negligence claim is barred under the statute of limitations, plaintiffs' objection on the certificate of review issue is moot.

**J.   Non-Objected to Portions of the Recommendation**

The Court has reviewed the rest of the recommendation to satisfy itself that there are "no clear error[s] on the face of the record."  *See* Fed. R. Civ. P. 72(b), Advisory Committee Notes.  Based on this review, the Court has concluded that the recommendation is a correct application of the facts and the law.

**IV.   CONCLUSION**

It is therefore

**ORDERED** that the Order and Recommendation of United States Magistrate Judge [Docket No. 70] is **ACCEPTED in part** and **REJECTED in part**.  It is further

**ORDERED** that Plaintiffs' Rule 72(b)(2) Objection to Magistrate's Order and Recommendation (ECF 70) [Docket No. 77] is **OVERRULED in part** and **SUSTAINED in part**.  It is further

**ORDERED** that Defendants Short-Elliott-Hendrickson, Inc. and Steve Kaye's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) [Docket No. 43] is **GRANTED**.  It is further

**ORDERED** that the Larimer County Defendants' Motion to Dismiss Plaintiffs' Amended Complaint (ECF 22) [Docket No. 47] is **GRANTED in part** and **DENIED in part**.  It is further

**ORDERED** that plaintiffs' first claim is **DISMISSED without prejudice**.  It is further

**ORDERED** that the portion of plaintiffs' second claim asserting a substantive due process claim is **DISMISSED with prejudice**.  It is further

**ORDERED** that plaintiffs' third, fourth, fifth, and sixth claims are **DISMISSED with prejudice.**  It is further

**ORDERED** that Plaintiffs' Amended Verified Motion for Order Finding Compliance with Certificate of Review Requirement [Docket No. 52] is **DENIED as moot**.  It is further

**ORDERED** that defendants Lori Hodges, Morgan Fay, Steve Kaye, and Short-Elliott-Hendrickson are terminated from this case.


DATED September 27, 2024.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge